JUDGE MARRERO

15 CV 04181

United States District Court
Southern District of New York

-----------------------------------------------------x

Westminister Securities Corporation,

        Plaintiff,

    v.

                                 Complaint

Uranium Energy Corporation and
UEC Concentric Merge Corporation,

           Defendants.

-----------------------------------------------------x

RECEIVED
JUN 01 2015
U.S.D.C. S.D.N.Y.
CASHIERS

        Plaintiff Westminster Securities Corporation, by its attorneys, for its Complaint herein,

respectfully alleges:

the parties

        1.  Plaintiff Westminster Securities Corporation ("WSC")  is a Delaware corporation with

its principal place of business located at 100 Wall Street, 7th Floor, New York, New York 10005.

        2.  Upon information and belief, Defendant Uranium Energy Corporation ("UEC") is a

Nevada Corporation with its principal place of business located at 1111 West Hastings Street,

Suite 320, Vancouver, British Columbia, Canada V6E2J3. Upon information and belief, UEC, at

all relevant times, was a uranium production, development and exploration company in the

business, among other things, of mining for uranium.

        3.  Upon information and belief, Defendant UEC Concentric Merge Corporation ("UEC

Merge Corp.") is a Nevada corporation with its principal place of business at 500 North

Shoreline, Suite 800N, Corpus Christi, Texas 78401. Upon information and belief, UEC Merge

Corp. was formed for the purposes of effectuating the merger between UEC and Concentric

Energy Corporation ("CEC") hereafter described and is a wholly owned subsidiary of UEC.

<u>jurisdiction and venue</u>

    4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) in that

it is an action between citizens of different states and the matter in controversy exceeds the sum

or value of $75,000, exclusive of interest and costs.

    5.  Venue is appropriate in this District under 28 U.S.C. §1391(b) in that it is the

exclusive district in which the parties agreed that the claims asserted herein could be brought and

it is the district in which a substantial part of the events giving rise to the claims occurred.

<u>facts underlying the claims</u>

    6.  In or about December 2008, CEC granted WSC warrants (the "Warrants") to purchase

204,349 shares of CEC common stock. The Warrants contained an initial exercise price of $1 per

share, subject to downward adjustment as provided in the Warrants. The Warrants expired

December 31, 2012. WSC received the Warrants in connection with its services in the successful

sale by CEC of its Debentures in December 2008. In three separate financings, by the end of

December, 2008, WSC had raised over $7 million for CEC. The WSC Warrants were identical in

all respects (except the number of shares into which they were exercisable) with the warrants issued to all of the persons who purchased the CEC Debentures in December 2008.

7. The Warrants contained a "ratchet-down" provision whereby the exercise price would be adjusted downward, and the number of shares into which the Warrants were exercisable would be adjusted upwards, in the event CEC issued securities at a price per share lower than the then obtaining exercise price. Thus section 3(b) of the Warrants provides:

> Subsequent Equity Sales. If the Company or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, shall sell . . . or issue . . . any Common Stock . . . at an effective price per share less than the then Exercise Price (such lower price, the "Base Share Price" and such issuance collectively, a "Dilutive Issuance") . . . then the Exercise Price shall be reduced to equal the Base Share Price divided by .9. Additionally, the number of Warrant Shares issuable hereunder shall be increased such that the aggregate Exercise Price payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the aggregate Exercise Price prior to such adjustment.

8. The Warrants obligated CEC to notify WSC in writing immediately upon the occurrence of any event requiring an adjustment to the exercise price of, and the number of shares covered by, the Warrants. Thus paragraph 3(b) provides:

> The Company shall notify the Holder, in writing, no later than the Business Day following the issuance of any Common Stock or Common Stock Equivalents subject to this Section 3(b), indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice, the "Dilutive Issuance Notice").

3

9. The Warrants also contained provisions for adjustments in the event of a merger. In that event, then upon exercise of the Warrants, the holder would receive, for each share of old CEC stock which the holder would otherwise have received upon exercise of the Warrants, that number of shares in the merged entity as a CEC stockholder received for one share of old CEC stock pursuant to the terms of the merger. Thus paragraph 3(e) of the Warrants provides:

> Fundamental Transaction. If, at any time while this Warrant is outstanding, (i) the Company effects any merger or consolidation of the Company with or into another Person, (ii) the Company effects any sale of all or substantially all of its assets in one or a series of related transactions . . . (each "Fundamental Transaction"), then, upon any subsequent exercise of this Warrant, the Holder shall have the right to receive, for each Warrant Share that would have been issuable upon such exercise immediately prior to the occurrence of such Fundamental Transaction, the number of shares of Common Stock of the successor or acquiring corporation or of the Company, if it is surviving corporation, and any additional consideration (the "Alternate Consideration") receivable as a result of such merger, consolidation or disposition of assets by a holder of the number of shares of Common Stock for which this Warrant is exercisable immediately prior to such event.

10. To the extent necessary to effectuate the calculation of the number of post-merger shares into which the Warrants were exercisable after a merger, the Warrant provided that CEC or its successor in any merger would issue a new warrant consistent with the post-merger number of shares to be received upon exercise of the Warrants. Thus the continuation of paragraph 3(e) of the Warrants provides:

> To the extent necessary to effectuate the foregoing provisions, any successor to the Company or surviving entity in such Fundamental Transaction shall issue to the Holder a new warrant consistent with the foregoing provisions . . . The terms of any agreement pursuant

4

to which a Fundamental Transaction is effected shall include terms
requiring any such successor or surviving entity to comply with the
provisions of this Section 3(e) and insuring that this Warrant (or
any such replacement security) will be similarly adjusted upon any
subsequent transaction analogous to a Fundamental Transaction.

11. The Warrants provided that on the Termination Date, December 31, 2012, if they
had not previously been exercised, they would be automatically exercised into shares of common
stock pursuant to the "cashless exercise" provisions thereof. Paragraph 2(c) provides:

Notwithstanding anything herein to the contrary, on the
Termination Date, this Warrant shall be automatically exercised
via cashless exercise pursuant to this Section 2(c).

12. The terms of the Warrants were binding on CEC's successors and assigns. Paragraph
5(k) provides as follows:

Successors and Assigns. Subject to applicable securities laws, this
Warrant and the rights and obligations evidenced hereby shall
inure to the benefit of and be binding upon the successors of the
Company and the successors and permitted assigns of the Holder.
The provisions of this Warrant are intended to be for the benefit of
all Holders from time to time of this Warrant and shall be
enforceable by the Holder or holder of Warrant Shares.

Thus, if CEC entered into a merger, the successor company in any such merger would be bound
by the terms of the Warrants. The terms of the Warrants could only be amended by a vote of the
holders holding warrants at least equal to 67% of the warrant shares issuable upon exercise of all
then outstanding warrants (paragraph 5(l)). The Warrants have never been amended.

13. On or about September 9, 2011, CEC merged with UEC pursuant to the Merger Agreement & Plan of Merger (the "Merger Agreement") between them dated May 5, 2011. CEC was also in the uranium mining business and had licenses to develop certain uranium properties located in Arizona which licenses were of interest to UEC. As stated by CEC and UEC in their public filings, the Merger Agreement contemplated a stock for stock merger whereby CEC stock would be exchanged for UEC stock and the CEC Warrants would be exchanged for UEC Exchange Warrants. As such, UEC became the successor to CEC. Upon information and belief, UEC, after the merger, in fact continued the mining and other operations theretofore conducted by CEC pursuant to the licenses theretofore owned by CEC. Upon information and belief, upon closing, CEC transferred its assets and properties to UEC Merge Corp., a wholly owned subsidiary of UEC.

14. Pursuant to the Merger Agreement, the exchange ratio for the number of shares of UEC common stock to be received by the CEC shareholders for each share of CEC common stock was 0.1075. Thus every 9.3 shares of CEC common stock was exchanged for one share of UEC common stock. Under the terms of the Warrants, therefore, the holder would receive one share of UEC common stock for every 9.3 shares of old CEC stock which otherwise would have been received upon exercise of the Warrants prior to the merger.

15. After the merger closed, UEC in fact issued new Warrants to WSC (the "Exchange Warrants"). Because WSC had not previously exercised any portion of the Warrants, applying the exchange ratio, the Exchange Warrants provided that they could be exercised for 21,968 shares of UEC common stock at an exercise price of $9.30. Upon information and belief, the

Exchange Warrants were issued at that exercise price and for that number of shares based upon the understanding that, because CEC had not theretofore sent any Dilutive Issuance Notice, the Warrants' exercise price and the number of CEC shares into which they were initially exercisable had not changed.

16. The Exchange Warrants, however, improperly made other changes to the terms of the Warrants which had not been approved by the required 67% of the warrant holders. Thus, among other things, the Exchange Warrants eliminated the provision for automatic exercise of the Warrants upon termination. As a successor to CEC, UEC was bound by all the terms of the Warrants and could not make unapproved, unilateral changes to the terms thereof in the Exchange Warrants.

17. After the Exchange Warrants were issued, WSC learned that prior to the merger, CEC had in fact issued shares at prices below the $1 exercise price of the Warrants, which automatically triggered the ratchet down provisions of the Warrants. On or about August 12, 2009, CEC issued shares at $0.001 per share to Rock Hankin, Dick Graff, Ron Parratt, Andy Simpson and Lynn Oates. Although contractually required to do so, CEC never sent a Dilutive Issuance Notice to inform WSC of the dilutive issuances.

18. Upon information and belief, CEC made other dilutive issuances of its common stock prior to the merger.

19.  As a result of the dilutive issuances in 2009, the exercise price of the Warrants just prior to the merger was $0.001 and the Warrants were exercisable into 170,290,833 shares of CEC common stock. Upon and after the merger, based upon the exchange ratio, UEC should have issued to WSC new warrants at a strike price of $0.0112 exercisable into 18,306,264 shares of UEC common stock. Because the Warrants provided that they were automatically exercised on a cashless basis upon their termination on December 31, 2012, which provision is also binding upon UEC as CEC's successor, WSC should have received 18,232,150 freely trading shares of UEC common stock on December 31, 2012.

First Claim for Relief
(Breach of Contract
Relief Sought - Damages)

20.  WSC realleges paragraphs 1 through 19.

21. On December 31, 2012, UEC, as successor to CEC, was obligated to issue to WSC 18,232,150 freely shares of UEC common stock.

22. UEC failed to issue such stock.

23.  As a result, WSC has been damaged.

8

<u>Second Claim for Relief</u>
(Breach of Contract
Relief Sought - Issuance of Shares)

24.  WSC realleges paragraphs 1 through 19.

25. On December 31, 2012, UEC, as successor to CEC, was obligated to issue to WSC 18,232,150 freely trading shares of UEC common stock.

26.  UEC failed to issue such stock.

27.  WSC has no adequate remedy at law.

28.  As a result, WSC is entitled to receive at least 18,232,150 freely trading shares of UEC common stock.

Wherefore, Plaintiff Westminster Securities Corp. demands judgment against Defendants Uranium Energy Corporation and UEC Concentric Merge Corporation as follows:

i) on the First Claim for Relief against both Defendants for damages in an amount to be
   determined at trial for the value of 18,232,150 shares of freely trading shares of
   Uranium Energy Corp.'s common stock on December 31, 2012; and

ii) on the Second Claim for Relief for an order directing Uranium Energy Corp. to deliver

    to Westminster Securities Corp. at least 18,232,150 freely trading shares of

    Uranium Energy Corp.'s common stock; and

iii) on both claims for relief, for interest, attorneys fees and the costs and disbursements

    of this action; and

iv) for such other, further and different relief as the Court deems just and proper

Law Offices of Kenneth A. Zitter

By_____
          Kenneth A. Zitter

Attorneys for Plaintiff Westminster
  Securities Corporation
260 Madison Avenue, 18th Floor
New York, NY 10016
212-532-8000
KAZ-3195