United States District Court
Southern District of New York
-------------------------------------------------x
Westminster Securities Corporation,   15 Civ. 04181(VM)

       Plaintiff,

   v.   Amended Complaint

Uranium Energy Corporation and
UEC Concentric Merge Corporation,

       Defendants.
-------------------------------------------------x

Plaintiff Westminster Securities Corporation, by its attorneys, for its Complaint herein, respectfully alleges:

<u>the parties</u>

1. Plaintiff Westminster Securities Corporation ("WSC") is a Delaware corporation with its principal place of business located at 100 Wall Street, 7th Floor, New York, New York 10005.

2. Upon information and belief, Defendant Uranium Energy Corporation ("UEC") is a Nevada Corporation with its principal place of business located at 1111 West Hastings Street, Suite 320, Vancouver, British Columbia, Canada V6E2J3. Upon information and belief, UEC, at all relevant times, was a uranium production, development and exploration company in the business, among other things, of mining for uranium.

3. Upon information and belief, Defendant UEC Concentric Merge Corporation ("UEC Merge Corp.") is a Nevada corporation with its principal place of business at 500 North

Shoreline, Suite 800N, Corpus Christi, Texas 78401. Upon information and belief, UEC Merge Corp. was formed for the purposes of effectuating the merger between UEC and Concentric Energy Corporation ("CEC") hereafter described and is a wholly owned subsidiary of UEC.

jurisdiction and venue

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) in that it is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is appropriate in this District under 28 U.S.C. §1391(b) in that it is the exclusive district in which the parties agreed that the claims asserted herein could be brought and it is the district in which a substantial part of the events giving rise to the claims occurred.

facts underlying the claims

6. In or about December 2008, CEC granted WSC warrants (the "Warrants") to purchase 204,349 shares of CEC common stock. The Warrants contained an initial exercise price of $1 per share, subject to downward adjustment as provided in the Warrants. The Warrants expired December 31, 2012. WSC received the Warrants in connection with its services in the successful sale by CEC of its Debentures in December 2008. In three separate financings, by the end of December, 2008, WSC had raised over $7 million for CEC. The WSC Warrants were identical in

all respects (except the number of shares into which they were exercisable) with the warrants issued to all of the persons who purchased the CEC Debentures in December 2008.

7. The Warrants contained a "ratchet-down" provision whereby the exercise price would be adjusted downward, and the number of shares into which the Warrants were exercisable would be adjusted upwards, in the event CEC issued securities at a price per share lower than the then obtaining exercise price. Thus section 3(b) of the Warrants provides:

> Subsequent Equity Sales. If the Company or any Subsidiary thereof, as applicable, at any time while this Warrant is outstanding, shall sell . . . or issue . . . any Common Stock . . . at an effective price per share less than the then Exercise Price (such lower price, the "Base Share Price" and such issuance collectively, a "Dilutive Issuance") . . . then the Exercise Price shall be reduced to equal the Base Share Price divided by .9. Additionally, the number of Warrant Shares issuable hereunder shall be increased such that the aggregate Exercise Price payable hereunder, after taking into account the decrease in the Exercise Price, shall be equal to the aggregate Exercise Price prior to such adjustment.

8. The Warrants obligated CEC to notify WSC in writing immediately upon the occurrence of any event requiring an adjustment to the exercise price of, and the number of shares covered by, the Warrants. Thus paragraph 3(b) provides:

> The Company shall notify the Holder, in writing, no later than the Business Day following the issuance of any Common Stock or Common Stock Equivalents subject to this Section 3(b), indicating therein the applicable issuance price, or applicable reset price, exchange price, conversion price and other pricing terms (such notice, the "Dilutive Issuance Notice").

9. The Warrants also contained provisions for adjustments in the event of a merger. In that event, then upon exercise of the Warrants, the holder would receive, for each share of old CEC stock which the holder would otherwise have received upon exercise of the Warrants, that number of shares in the merged entity as a CEC stockholder received for one share of old CEC stock pursuant to the terms of the merger. Thus paragraph 3(e) of the Warrants provides:

> Fundamental Transaction. If, at any time while this Warrant is outstanding, (i) the Company effects any merger or consolidation of the Company with or into another Person, (ii) the Company effects any sale of all or substantially all of its assets in one or a series of related transactions . . . (each "Fundamental Transaction"), then, upon any subsequent exercise of this Warrant, the Holder shall have the right to receive, for each Warrant Share that would have been issuable upon such exercise immediately prior to the occurrence of such Fundamental Transaction, the number of shares of Common Stock of the successor or acquiring corporation or of the Company, if it is surviving corporation, and any additional consideration (the "Alternate Consideration") receivable as a result of such merger, consolidation or disposition of assets by a holder of the number of shares of Common Stock for which this Warrant is exercisable immediately prior to such event.

10. To the extent necessary to effectuate the calculation of the number of post-merger shares into which the Warrants were exercisable after a merger, the Warrant provided that CEC or its successor in any merger would issue a new warrant consistent with the post-merger number of shares to be received upon exercise of the Warrants. Thus the continuation of paragraph 3(e) of the Warrants provides:

> To the extent necessary to effectuate the foregoing provisions, any successor to the Company or surviving entity in such Fundamental

> Transaction shall issue to the Holder a new warrant consistent with
> the foregoing provisions . . . The terms of any agreement pursuant to
> which a Fundamental Transaction is effected shall include terms
> requiring any such successor or surviving entity to comply with the
> provisions of this Section 3(e) and insuring that this Warrant (or any
> such replacement security) will be similarly adjusted upon any
> subsequent transaction analogous to a Fundamental Transaction.

11. The Warrants provided that on the Termination Date, December 31, 2012, if they had not previously been exercised, they would be automatically exercised into shares of common stock pursuant to the "cashless exercise" provisions thereof. Paragraph 2(c) provides: "Notwithstanding anything herein to the contrary, on the Termination Date, this Warrant shall be automatically exercised via cashless exercise pursuant to this Section 2(c)."

12. The terms of the Warrants were binding on CEC's successors and assigns. Paragraph 5(k) provides as follows:

> Successors and Assigns. Subject to applicable securities laws, this
> Warrant and the rights and obligations evidenced hereby shall inure
> to the benefit of and be binding upon the successors of the
> Company and the successors and permitted assigns of the Holder.
> The provisions of this Warrant are intended to be for the benefit of
> all Holders from time to time of this Warrant and shall be
> enforceable by the Holder or holder of Warrant Shares.

Thus, if CEC entered into a merger, the successor company in any such merger would be bound by the terms of the Warrants. The Warrants, by their terms, could only be amended by a vote of the holders holding warrants at least equal to 67% of the warrant shares issuable upon exercise of all then outstanding warrants (Warrants, ¶5(l)). The Warrants have never been amended.

13. On or about September 9, 2011, CEC merged with UEC pursuant to the Merger Agreement & Plan of Merger (the "Merger Agreement") between them dated May 5, 2011. CEC was also in the uranium mining business and had licenses to develop certain uranium properties located in Arizona which licenses were of interest to UEC. As stated by CEC and UEC in their public filings, the Merger Agreement contemplated a stock for stock merger whereby CEC stock would be exchanged for UEC stock and the CEC Warrants would be exchanged for UEC Exchange Warrants (the "UEC Warrants"). As such, UEC became the successor to CEC. Upon information and belief, UEC, after the merger, in fact continued the mining and other operations theretofore conducted by CEC pursuant to the licenses theretofore owned by CEC. Upon information and belief, upon closing, CEC transferred its assets and properties to UEC Merge Corp., a wholly owned subsidiary of UEC.

14. Pursuant to the Merger Agreement, the exchange ratio for the number of shares of UEC common stock to be received by the CEC shareholders for each share of CEC common stock was 0.1075. Thus, without properly giving effect to the anti-dilution provision of Section 3(b) of the Warrants, every 9.3 shares of CEC common stock was exchanged for one share of UEC common stock. Under the terms of the Warrants, therefore, the holder would receive one share of UEC common stock for every 9.3 shares of old CEC stock which otherwise would have been received upon exercise of the Warrants prior to the merger.

15. Several weeks after the merger closed, UEC in fact issued to WSC the new UEC Warrants. Because WSC had not previously exercised any portion of the Warrants, applying the

exchange ratio, the UEC Warrants provided that they could be exercised for 21,968 shares of UEC common stock at an exercise price of $9.30. Upon information and belief, the UEC Warrants were issued at that exercise price and for that number of shares based upon the understanding that, because CEC had not theretofore sent any Dilutive Issuance Notice, the Warrants' exercise price and the number of CEC shares into which they were initially exercisable had not changed. Contrary to such understanding, as hereafter set forth, Dilutive Issuances had previously occurred. CEC, contrary to its contractual obligation, failed to notify WSC timely of such issuances. Thus WSC did not receive the correct number of UEC Warrants and the Exercise Price set forth therein was incorrect.

16. Prior to the merger, UEC did not notify WSC of the terms of the proposed UEC Warrants and the manner in which they differed from the Concentric Warrants held by WSC. Prior to the merger, neither UEC nor Concentric publicly filed any copy of the proposed new UEC Warrants. Prior to the merger, therefore, WSC had no notice or knowledge that the proposed UEC Warrants eliminated material terms contained in the Concentric Warrants. Thus, among other things, the UEC Warrants eliminated the provision for the automatic cashless exercise of the Warrants upon termination. Those changes required approval of 67% of the Warrant holders which neither Concentric nor UEC ever obtained. WSC neither intended nor agreed to accept the UEC Warrants, which lacked material terms contained in the Concentric Warrants and were issued for an incorrect number of shares and an incorrect Exercise Price, in exchange for the Concentric Warrants.

17. After the UEC Warrants were issued, WSC learned that prior to the merger, CEC had in fact issued shares at prices below the $1 exercise price of the Warrants. On or about August 12, 2009, CEC issued shares at $0.001 per share to Rock Hankin, Dick Graff, Ron Parratt, Andy Simpson and Lynn Oates. Those share issuances were Dilutive Issuances which automatically reduced the Exercise Price of the Warrants and increased the number of shares into which the Warrants could be exercised. Those issuances were part of a plan by the recipients, as alleged in a lawsuit pending in Arizona state court, to help themselves improperly to hundreds of thousands of Concentric shares to WSC's great detriment. As noted above, although contractually required to do so, CEC never sent a Dilutive Issuance Notice to WSC.

18. CEC made other dilutive issuances of its common stock prior to the merger, including a dilutive issuance on April 12, 2010.

19. As a result of the dilutive issuances in 2009 and thereafter, the exercise price of the Warrants just prior to the merger was $0.001 and the Warrants were exercisable into 170,290,833 shares of CEC common stock. Upon and after the merger, based upon the exchange ratio, UEC should have issued to WSC new UEC Warrants with a strike price of $0.0112 exercisable into 18,306,264 shares of common stock. Because the Warrants provided that they were automatically exercised on a cashless basis upon their termination on December 31, 2012, which provision is also binding upon UEC as CEC's successor, on December 31, 2012, WSC should have received 18,232,150 freely trading shares of UEC common stock.

### First Claim For Relief
(breach of contract relief sought - damages)

20. WSC realleges paragraphs 1 through 19.

21. On December 31, 2012, UEC, as successor to CEC, was obligated to issue to WSC 18,232,150 shares of freely trading UEC common stock.

22. UEC failed to issue such stock.

23. As a result, WSC has been damaged.

### Second Claim for Relief
(breach of contract relief sought – issuance of shares)

24. WSC realleges paragraphs 1 through 22.

25. WSC has no adequate remedy at law.

26. As a result, WSC is entitled to receive 18,232,150 shares of freely trading UEC common stock.

### Third Claim for Relief
(breach of contract; relief sought - damages)

27. WSC realleges paragraphs 1 through 19.

28. Concentric, on and after August 9, 2009, was obligated to inform WSC that dilutive issuances had occurred.

29. As a result of such dilutive issuances, Concentric was obligated to reset the exercise price of the Warrants and the number of shares into which the Warrants were exercisable.

30. Concentric failed to so notify WSC of the dilutive issuances or to reset the Exercise Price of the Warrants and the number of shares into which the Warrants were exercisable.

31. As a result of such failure, WSC has been damaged in an amount to be determined at trial.

32. UEC and UEC Merge Corp., as a successors to Concentric, are responsible for all such damages.

Wherefore, the WSC demands judgment against Defendants Uranium Energy Corporation and UEC Concentric Merge Corporation as follows:

i. on the First and Third Claims for Relief against both Defendants for damages in an amount to be determined at trial; and

ii. on the Second Claim for Relief for an order directing Uranium Energy Corp. to deliver to WSC 18,232,150 shares of freely trading UEC common stock; and

iii. on all claims for relief, for interest, attorneys' fees and the costs and disbursements of this action all as set forth in Section 5(g) of WSC's Warrants; and

iv. for such other, further and different relief as the Court deems just and proper.

Law Offices of Kenneth A. Zitter

By: _____
Kenneth A. Zitter, Esq.
Attorneys for Plaintiff
   Westminster Securities Corporation
260 Madison Avenue-18th Floor
New York, New York 10016
212-532-8000
KAZ-3195