USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/18/16

LAW OFFICES
**KENNETH A. ZITTER**
260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 532-8000



May 13, 2016

Honorable Victor Marrero
United States District Judge
United States District Courthouse
500 Pearl Street
New York, New York 10007

Re: <u>Westminster Securities Corporation *et al.* v. Uranium Energy Corporation *et ano.*</u>
15 CV 04181 (VM)

Dear Judge Marrero:

We are counsel to Plaintiffs in the captioned matter. An issue has arisen between the parties regarding the proper place for Defendants' deposition(s). Plaintiffs contend that the 30(b)(6) deposition of Defendants Uranium Energy Corporation and UEC Merge Corp. (together "UEC") and of Amir Adnani ("Adnani"), its chief executive officer (if he is not the 30(b)(6) designee), should proceed in New York. Defendants contend that the deposition(s) should proceed in Vancouver, British Columbia, Canada, UEC's principal place of business and Adnani's residence.[1] In accordance with Your Honor's Rules, the parties submit herewith a joint letter setting forth their respective contentions.

<u>Plaintiffs' contentions</u>

Plaintiffs contend that the applicable forum selection clause and considerations of cost, convenience, and litigation efficiency dictate that UEC's deposition go forward in New York.

Plaintiffs purchased Warrants from Concentric Energy Corporation ("CEC") in December 2008. Those Warrants contain a forum selection clause which designates this district as the exclusive district in which claims relating to the Warrants could be brought. UEC merged with CEC in September 2011. The merger was accomplished by an exchange of UEC stock for CEC stock. UEC was the surviving corporation. UEC, therefore, as CEC's successor, is bound to the terms of the Warrants, including the forum selection clause, in claims relating to the Warrants, as Plaintiffs assert herein.

As a general rule, "the party noticing the deposition usually has the right to choose the location." *See* 7 Moore's Federal Practice, § 30.20 [1] [b] [ii]. Plaintiffs have selected this district

---

[1] UEC is a Nevada corporation with its principal place of business in Vancouver.

as the situs of the deposition(s). Because UEC, under the forum selection clause, agreed to come into this district for purposes of any lawsuit, and Plaintiff has selected this district as the place of the deposition, Plaintiffs' choice of location should be binding.

Additionally, considerations of cost, convenience and litigation efficiency clearly favor the situs of the deposition in New York. See *Gulf Union Ins. Co.,* 1992 WL 51532, at * 5; *Zurich Insur. Co. v. Essex Crane Rental Corp.,* 1991 WL 12133, at * 2–3 (S.D.N.Y. Jan. 21, 1991); *Mill–Run Tours v. Khashoggi,* 124 F.R.D. 547, 550–51 (S.D.N.Y.1989) (The place to conduct the deposition of a corporate defendant and its agents depends upon an analysis of three factors: cost, convenience, and litigation efficiency.)

UEC is represented by counsel located in Phoenix, Arizona. Thus UEC's counsel will need to travel in any event for the deposition, either to New York or Vancouver. Plaintiffs are represented by New York counsel who would not need to travel if the deposition occurred in New York. Three of the four Plaintiffs are located in New York (Plaintiff David Holbrooke resides in California). Plaintiff John O'Shea's presence at the UEC deposition is indispensable to Plaintiffs. He was a Plaintiff in the Arizona lawsuit in which hundreds of thousands of documents were produced and his knowledge of and familiarity with those documents, many of which are relevant herein, is essential in conducting UEC's deposition(s). Thus if the deposition(s) proceeds in Vancouver, O'Shea would need to travel there.

Plaintiff Westminster has only three employees. Plaintiff AWM is a private family company which has only one manager who resides in New York. Thus their respective presences at their businesses in New York is essential. They rarely travel on Westminster or AWL business. UEC, on the other hand, is a public corporation listed on the New York Stock Exchange. Mr. Adnani frequently travels on UEC business. As UEC stated in its email, "As the CEO of UEC, he [Adnani] obviously has significant responsibilities and travels extensively for business purposes."[2] Indeed, to the best of Plaintiffs' knowledge, Mr. Adnani travels to New York on UEC's business on a regular basis. UEC's investment bankers are located in New York. UEC has a net worth, as of its last publicly filed financial statements, of $50 million and paid in capital of over $200 million. UEC's market capitalization is approximately $87 million. Thus the expense of traveling to New York is not burdensome for UEC. The burden and expense of travel, therefore, are significantly less for UEC than for Plaintiffs.

Further, the depositions will involve many documents which are located in New York. There is a great burden in transporting those documents across the country. Although Defendants suggest that electronic storage would mitigate that burden, hard copies of the documents must be

---

[2] The email correspondence between the parties which they exchanged in an attempt to resolve the matter without Court intervention is included herewith.

2

available to present to the deponent. Hard copies of documents which Plaintiffs were not anticipating would be used at the deposition also need to be available. Electronic storage, therefore, will not mitigate the burden and expense of transporting the documents.

Defendants contend that the UEC deposition should proceed in Vancouver because there is a presumption that a defendant's deposition should go forward in its principal place of business. To the extent any such presumption is applicable in this case (which, as hereafter set forth, it is not) any such presumption is often "honored in the breach."³ In any event, as hereafter set forth, any such presumption does not outweigh considerations of cost, convenience and litigation efficiency which usually determine the proper place for a deposition.

Any presumption that Defendants should be examined in their place of residence is based upon Plaintiff's ability initially to choose the forum state. Defendants, on the other hand, are not before the court which Plaintiff selected by choice and, therefore, should not be inconvenienced by being compelled to come to the location where Plaintiff chose to initiate suit. ("Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice." *Mill–Run Tours v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989) citing *Farquhar v. Shelden,* 116 F.R.D. 70, 72 (E.D.Mich. 1987)).

Where, however, as here, there is a forum selection clause, any such presumption does not apply. *Mill–Run Tours, supra,* 124 F.R.D. at 550–51 ("Because courts retain substantial discretion to designate the site of a deposition, the presumption appears to be merely a decisional rule that facilitates determination when other relevant factors do not favor one side over the other."); *Buzzeo v. Bd. of Educ., Hempstead,* 178 F.R.D. 390, 392 (E.D.N.Y. 1998); *Zurich Insur. Co. v. Essex Crane Rental Co.,* 1991 WL 12133, at *2 (S.D.N.Y Jan. 29, 1991)("the presumption is not a strong one and operates primarily when other factors do not favor any particular site for depositions"). Where this factual premise [i.e., Defendant is not in the jurisdiction by choice] is attenuated, the presumption is weakest. See *South Seas Catamaran, Inc. v. M/V "LEEWAY,"* 120 F.R.D. 17, 21 (D. N.J. 1988). Indeed, UEC has conceded that "several federal district courts have indicated that a forum selection clause should be taken into account for purposes of the analysis [where the deposition should take place] and that, in a given case, may be sufficient to overcome the "presumption" that a defendant should be deposed where he resides or does business."

---

³*Mill–Run Tours v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989) citing *Afram Export Corp. v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1365 (7th Cir.1985); *South Seas Catamaran, Inc. v. M/V "LEEWAY,"* 120 F.R.D. 17, 21 n. 5 (D.N.J. 1988); *Haymes v. Smith,* 73 F.R.D. at 575; *Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94, 96–97 (S.D.N.Y.1968).

3

Corporate defendants are frequently deposed away from their principal place of business. ("Corporate defendants are frequently deposed in places other than the location of the principal place of business, especially in the forum, for the convenience of all the parties and in the general interests of judicial economy." *Sugarhill Records, Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 171 (S.D.N.Y. 1985). As noted above, considerations of cost, convenience and litigation efficiency prevail over any presumption. Those factors, as noted above, indicate that the forum state is the proper location for UEC's deposition(s).

Because Defendants reviewed Plaintiffs' contentions herein several days before submitting their own contentions to be included herein, Plaintiffs are compelled to reply to certain of the contentions made by Defendants. First, although there were two prior lawsuits in Arizona which were based on some of the same transactions involved in this lawsuit, the claims therein differ from the claims herein. Thus depositions in this case are essential. Indeed, Defendants are also planning to take all of Plaintiffs' depositions in this case. Further, the locations of the depositions in the Arizona lawsuits, which were pending in Phoenix, are not relevant to the location of the Defendants' depositions in this case. Whatever the factors which allowed Mr. O'Shea's deposition in the Arizona lawsuit to proceed in Vancouver, those factors do not apply herein. In any event, Mr. Adnani accompanied Mr. O'Shea on the plane from Vancouver back to New York after the deposition.

Defendants set forth many assertions, for whatever benefit they believe will accrue to them, which are unrelated to determining where the depositions should take place. Those assertions include a claim that Plaintiff Westminster is in the litigation business and that Plaintiffs were guaranteed a 15% return on their December 2008 investment. Those assertions are untrue. Plaintiffs' failure to respond to each of Defendants' assertions should not be taken as Plaintiffs' concurrence with any of them. All of the true facts will come out at trial.

Defendants' contentions

Defendants respectfully disagree that considerations of cost, convenience, and efficiency require that Uranium Energy Corp.'s ("UEC") Chief Executive Officer, Amir Adnani ("Adnani"), and UEC's Rule 30(b)(6) designee, travel to New York for depositions in this case. While the Defendants acknowledge that this Court has discretion regarding the timing and location of depositions, they respectfully submit that these factors weigh heavily towards requiring Plaintiffs to depose the Defendants in Vancouver, British Columbia, where they reside and conduct business.

4

## Factual Background

In December 2008, the Plaintiffs (and others) invested in debentures offered by Concentric Energy Corporation ("CEC") In addition to a guaranteed return of 15% on that investment, Plaintiffs received 4-year exercise term stock warrants from CEC. In 2011, UEC entered into a merger agreement with CEC, through UEC Concentric Merge Corp. ("UEC Mergeco"), its wholly-owned subsidiary, pursuant to which UEC issued exchange warrants to each of the Plaintiffs upon the completion of the merger. At no time before or after the UEC merger did any of the Plaintiffs exercise their rights under the original CEC warrants or the UEC exchange warrants. UEC was not a party to the related debenture agreements, but fully paid the obligations of CEC under those debenture agreements in exchange for a full release of all claims relating to the debenture agreements at the closing of the merger.

However, in March 2012, three of the four Plaintiffs in this action (all but Westminster Securities Corporation ("Westminster"),[4] filed suit against CEC, UEC, UEC Mergeco, and certain officers and directors of CEC, in Yavapai County (Arizona) Superior Court. In the Arizona action, Plaintiffs asserted various claims relating to their investments in CEC. On the eve of the close of discovery, Plaintiffs sought leave to amend their complaint (for the second time) to assert the same "warrant" claims which are the subject of this action.

The Arizona court denied Plaintiffs' leave to amend based upon its untimeliness. Nevertheless, prior to that ruling, Plaintiffs deposed both Mr. Adnani and UEC's former Chief Financial Officer, Mark Katsumata, in Vancouver, British Columbia. John O'Shea attended both of those depositions, which were taken on January 29 and March 30, 2016.

The transcripts of those depositions reflect that those individuals were extensively questioned about the merger, the CEC warrants, the UEC exchange warrants, and virtually all of the subjects Plaintiffs' current counsel has now set forth in a tentative Rule 30(b)(6) request.[5] It should also be noted that Plaintiff John O'Shea personally attended at least three other depositions taken in Phoenix, Arizona during the course of that litigation, as well as multiple hearings on motions heard by the court in Yavapai County, Arizona. At no time did Mr. O'Shea or his counsel suggest that those travels presented a hardship to him or the plaintiffs in the Arizona action. Indeed, in his own deposition, Mr. O'Shea testified that his current line of business, through Westminster, is litigation funding. This lawsuit is an integral part of Mr. O'Shea's "business."

---

[4] John O'Shea is the principal of Westminster. Westminster was the "placement agent" for CEC in several private securities offerings prior to the merger with UEC including the debenture offering.

[5] Plaintiffs have not yet served defendants with notices of deposition or a formal Rule 30(b)(6) request, but have informally provided a list of subject areas as to which they intend to depose UEC.

5

In contrast, Mr. Adnani and UEC are not in the business of litigation. As UEC's Chief Executive Officer, Mr. Adnani has significant responsibilities that require extensive travel for business purposes. Requiring that he travel to New York for a second deposition by Plaintiffs on essentially the same topics covered in his previous deposition will take him away from the business of operating UEC for at least three days. It will also require UEC's lead litigation counsel in this case, Michael S. Rubin, to spend approximately the same amount of time traveling to and from New York for the UEC depositions.

Moreover, Mr. Adnani and UEC had no involvement in, and have no direct personal knowledge of, the 2009 and 2010 CEC stock issuances that are the basis for plaintiffs' claims in this action, which took place well before the UEC-Concentric merger consummated in September 2011. UEC's position in this action that those transactions did not trigger the anti-dilution protection in the CEC warrants is based upon the information provided by and the representations of CEC (including lists of shareholders, warrant holders, debenture holders, and the exercise prices attached to the various warrants provided) prior to the merger completion, as well as the information UEC has subsequently acquired. Certainly, Plaintiffs have a right to depose Mr. Adnani and UEC with respect to the 2011 merger (which they have already done), but they can easily do so in Vancouver as they have previously agreed to do and done so.

## Legal Analysis

The case authorities cited by Plaintiffs do not support their position. For example, in *Gulf Union Ins. Co.*, 1992 WL 51532 (S.D.N.Y. 1992), the court denied the New York based plaintiff's request to require depositions of a foreign defendant to be conducted in New York. The court concluded that the plaintiff had failed to establish that defendant was better able than plaintiff to bear the expense of depositions, nor that depositions in New York would be less costly than in the alternative forum. Plaintiff had also failed to show that any deposition oversight by the court would be necessary, and it was noted that the depositions would likely involve extensive records of the defendant, which were at its offices, not in New York.

Likewise here, there is no showing that UEC is better able than Plaintiffs to fund costs of travel to depositions. Indeed, the publicly available financial history of UEC shows that it is and has for some time been losing money, with the years-long downturn in the uranium market. Further, there is no suggestion that this court would need to be involved in any way in the proposed depositions, regardless where they are conducted.

Similarly, in *Zurich Ins. Co. v. Essex Crane Rental Corp.*, 1991 WL 12133 (S.D.N.Y. 1991), the court found that a deposition of defendant's representatives conducted in the forum state of New York would be more convenient and less costly, but only because both parties' counsel were located in New York. Indeed, the court conditioned its order granting the plaintiff's request for New York

6

depositions on plaintiff bearing the travel and lodging expenses for defendant's representatives to attend the depositions away from their homes and office (an offer that Plaintiffs have not made in the present case).

In *Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547 (S.D.N.Y. 1989), the court allowed depositions of foreign defendants to be conducted in the forum, but did so in large part on the bases that (i) the transactions at issue in fact took place in New York, (ii) both sides' counsel were in New York, and (iii) primarily because (based on the history in the case of "acrimony" over discovery issues) substantial judicial supervision over the depositions by the New York court was anticipated. Those factors are absent in the present case.

Although a forum selection clause is properly considered in the analysis of cost, convenience, and efficiency, it is not determinative. For example, in *Ambac Assurance Corp. v. Adelanto Public Utility Authority,* 2012 WL 1589597 (S.D.N.Y. 2012), the court was dealing with a situation very much like the present one. In a contract action involving claims between a surety company and a public utility, the surety sought to depose the utility's representative in New York, the situs of the litigation, relying upon the forum selection clause in the contract. Notwithstanding that provision and the fact that the plaintiff was required to file suit in that forum, the court held that a balancing of the costs, convenience, and efficiency militated in favor of requiring the plaintiff to depose the defendant's representative in his home state of California. The court noted that the defendant's representative would lose three (3) days of work and that requiring that the deposition take place in New York would be unduly expensive and inconvenient to the defendant. The same result should obtain in the present case, particularly in light of the fact that UEC was not a party to the December 2008 debenture agreement containing the forum selection clause.

Finally, Plaintiffs argue that the depositions of UEC should be taken in New York in part because of the large volume of documents that would have to be transported to the situs of the depositions. That issue is easily resolved through the electronic storage and transmission of deposition exhibits and does not justify the expense and inconvenience to UEC of depositions thousands of miles from their residence and business.

For the reasons stated herein, defendants request that the Court require that the deposition or depositions of UEC representatives take place in Vancouver, B.C.

7

Joint request

The parties, therefore, seek the Court's instructions as to the location of the UEC deposition(s).

Respectfully,

Kenneth A. Zitter

KAZ/nr

by hand

cc: Michael Rubin, Esq.

by email

The parties are directed to address the matter set forth above to Magistrate Judge Gabriel Gorenstein, to whom this dispute has been referred for resolution, as well as for supervision of remaining pretrial proceedings, establishing case management schedules as necessary, and settlement.

SO ORDERED.

5-18-16
Date

VICTOR MARRERO, U.S.D.J.