United States District Court
Southern District of New York
-------------------------------------------------------x

Westminster Securities Corporation,
David R. Holbrooke, M.D., AWM Holdings,
LLC and John O'Shea,

15 Civ. 04181(VM)(GWG)

Plaintiffs,

v.

Uranium Energy Corporation and
UEC Concentric Merge Corporation,

Defendants.
-------------------------------------------------------x

### Plaintiffs' Memorandum of Law In Opposition
### To Defendants' Motion To Withdraw Jury Demand

Law Offices of Kenneth A. Zitter
Attorneys for Plaintiffs
    Westminister Securities Corporation,
    David R. Hobrooke, M.D., AWM
    Holdings, LLC and John O'Shea
260 Madison Avenue - 18th Floor
New York, New York 10016
212-532-8000

# Table of Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Point 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Defendants Have Not Established That
    Any Party Waived Its Right To A Jury Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Point 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Even If, Contrary To Fact, The Draft SPA Contained
    An Enforceable Jury Waiver Provision, Defendants
    Have Relinquished Any Right To Withdraw Their Jury Demand . . . . . . . . . . . . . . . . . 8

Point 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    The Court Should Not Permit Defendants To
    Change Their Trial Strategy By Changing The
    Trier Of Fact After The Close Of Fact Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Point 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    Defendants Are Not Entitled To Withdraw Their Jury Demand . . . . . . . . . . . . . . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Table of Authorities</u>

*Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 81 L. Ed. 1177, 57 S. Ct. 809 (1937) . . . . . . . . . . . . 6

*Atherton v. Online Video Network, Inc.*, 274 F. Supp. 2d 592 (S.D.N.Y. 2003) . . . . . . . . . . . . 9

*Berisford Capital Corp. v. Syncom Corp.*, 650 F. Supp. 999 (S.D.N.Y. 1987) . . . . . . . . . . . . 15

*Charell v. Gonzalez*, 241 B.R. 67 (Bankr. S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chase Manhattan Bank, N.A. v. Aldridge,*
91 Civ. 2649 (PKL), 1994 U.S. Dist. LEXIS 3331 (S.D.N.Y. Mar. 18, 1994) . . . . . . . . . . . . . 10

*Coleman v. Lazy Days RV Ctr., Inc.,*
2007 WL 2696789 (M.D. Fla. Sept. 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Crescent Res. Litig. Trust by & ex rel. Bensimon v. Duke Energy Corp.*, 2013 U.S.
Dist. LEXIS 62676 (W.D. Texas May 2, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dell'Orfano v. Romano*, 962 F.2d 199 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Dice v. Inwood Hills Condo.*, 237 A.D.2d 403,
655 N.Y.S.2d 562 (App. Div. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Engines, Inc. v. MAN Engines & Components, Inc.,*
2012 WL 589558 (D.N.J. Feb. 22, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648 (7th Cir. 1989) . . . . . . . . . . . . . 16

*Heyman v. Kline*, 456 F.2d 123 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*In re Westchester Tank Fabricators, Ltd.*, 207 B.R. 391 (Bankr. E.D.N.Y. 1997) . . . . . . . . . . 10

*In re THW Enters.*, 89 B.R. 351 (Bankr. S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Johnson v. Zerbst*, 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938) . . . . . . . . . . . . . . . . . 9

*Jones v. Hirschfeld,* No. 01 CIV 7585 (PKL),
2003 WL 21415323 (S.D.N.Y. June 19, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kahn v. GMC*, 865 F. Supp. 210 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kirsch v. Brightstar Corp.*, 2014 WL 5166527 (N.D. Ill. Oct. 10, 2014) . . . . . . . . . . . . . . . . 12

*Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc.*,
863 F. Supp. 2d 118 (D. Mass. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Lee v. Wright*, 108 A.D.2d 678, 485 N.Y.S.2d 543 (App. Div. 1985) . . . . . . . . . . . . . . . . . . . . 9

*National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255 (2d Cir. 1977) . . . . . . . . . . . . . . . 6

*Quinn Const., Inc. v. Skanska USA Bldg., Inc.*,
2010 WL 4909587 (E.D. Pa. Nov. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rosen v. Dick*, 639 F.2d 82 (2d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

*Sapp v. Propeller Co. LLC*, 12 A.D.3d 218, 784 N.Y.S.2d 532 (2004) . . . . . . . . . . . . . . . . . . 13

*S. & E. Motor Hire Corp. v. N.Y. Indem. Co.*,
255 N.Y. 69, 174 N.E. 65 (1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Scherer v. Equitable Life Assur. Soc'y of the United States*,
2004 U.S. Dist. LEXIS 18875 (S.D.N.Y. Sep. 17, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sherrill v. Grayco Builders, Inc.*, 64 N.Y.2d 261,
486 N.Y.S.2d 159, 475 N.E.2d 772 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stark v Molod Spitz DeSantis & Stark, P.C.*, 9 NY3d 59,
876 N.E.2d 903, N.Y.S.2d 217 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Tanvir v. Laporte*, 169 F.R.D. 292 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Topline Solutions, Inc. v. Sandler Sys.*,
131 F. Supp. 3d 435 (D. Md. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Tray-Wrap, Inc., v. Six L's Packing Co., Inc.* 984 F.2d 65 (1993) . . . . . . . . . . . . . . . . . . . . . . 7

*Walker v. Edison Chouest Offshore, L.L.C.*,
No. 04 CIV.2954 MBM, 2006 WL 2212464 (S.D.N.Y. Aug. 3, 2006) . . . . . . . . . . . . . . . . . . 15

*Wendy's of Bowling Green, Inc. v. Marsh USA, Inc.*,
No. 3-10-1043, 2012 WL 370486 (M.D. Tenn. Feb. 3, 2012) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wright v. Lewis*, 76 F.3d 57 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Zimmerman v. Cohen*, 236 N.Y. 15, 139 N.E. 764 (1923) . . . . . . . . . . . . . . . . . . . . . . . . 9


<u>Federal Rules of Civil Procedure</u>:

Rule 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule 38 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 21

Rule 38(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21

Rule 38(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rule 38(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 21

Rule 39(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Rule 39(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21




Wright and Miller, *Federal Practice and Procedure:*
*Civil 3d*, §2321 (2008 Ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8 Corbin, *Contracts*, §40.13 (1999 ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Preliminary Statement

Plaintiffs Westminster Securities Corporation ("Westminster"), David R. Holbrooke, M.D. ("Holbrooke"), AWM Holdings, LLC ("AWM Holdings") and John O'Shea ("O'Shea") (together, "Plaintiffs") submit this Memorandum of Law in opposition to Defendants' motion to withdraw their jury demand included in their Answers filed at the inception of this case.

The Court should deny Defendants' motion to withdraw their jury demand because:

 i. Defendants have not established that any party waived its right to a jury. The only evidence that Defendants submit in support of their motion is an unsigned Draft Securities Purchase Agreement dated December _ 2008 (the"Draft SPA")[1], which purports to contain a jury waiver. Because there is no executed jury waiver, and Defendants submit no other evidence that the parties waived a jury, there is no basis in law or in fact to allow Defendants to retract their knowing designation of a jury at the commencement of this case as the trier of fact.

 ii. With respect to Westminster, it obtained its Concentric Energy Corporation ("CEC") Warrants as a fee for investment banking services provided to CEC. It was never contemplated that CEC and Westminster would enter into a securities purchase agreement and, in fact, they did not. Thus neither CEC nor Westminster ever waived any right to a jury.

---

[1] See Exhibit A to Defendants' Memorandum of Law.

iii. Even if the parties did waive their rights to a jury trial in the unsigned Draft SPA (which they did not), by knowingly demanding a jury trial in their Answer, and by thereafter agreeing in writing that this case would be tried to a jury, which agreement was incorporated in a Court Order, Defendants, as a matter of law, both waived whatever prior right they may have had to enforce the jury waiver and entered into a superseding agreement eliminating any jury waiver.

iv. Defendants have been "considering withdrawal of [their] request for a jury for "some time."[2] Yet they waited until after the close of fact discovery on September 30, 2016, and more than one year after making their jury demand, to bring this motion. Thus Defendants' strategy was to reserve for themselves the option of reviewing all the evidence before having to choose the trier of fact. If, after close of discovery, they still believed that their case resonated better with a jury, they would have left their original jury designation undisturbed. If they then determined, as they apparently have, that a judge was a better option for Defendants to prevail, they would move to withdraw the jury demand, as they have now done. Defendants' conduct is highly inequitable and contrary to the Federal Rules which require the designation of the trier of fact well before commencement of discovery.

---

[2] See Exhibit B to Defendants' Memorandum of Law.

<u>Facts</u>

The facts relevant to this motion are as follows[3]: On or about December 31, 2008, Plaintiffs purchased convertible debentures of CEC and additionally received warrants to purchase CEC shares (the "CEC Warrants"). At all relevant times, Plaintiffs have owned more than two thirds of the outstanding CEC Warrants (O'Shea Affirmation, ¶2). In September 2011, Defendant Uranium Energy Corporation ("UEC") merged with CEC, with UEC as the surviving entity of the merger. In connection with such merger, UEC issued its own warrants (the "UEC Exchange Warrants") to replace the CEC Warrants. Under the terms of the CEC Warrants, UEC, as CEC's successor, was bound by all the terms of the CEC Warrants.

One of the terms of the CEC Warrants which UEC was required to include in the UEC Exchange Warrants, but did not, was anti-dilution protection. In the event CEC issued shares for a price less than the exercise price of the CEC Warrants, then the exercise price of the CEC Warrants would be reduced to that lower price and the number of shares into which the CEC Warrants could be exercised would be increased in accordance with the formula set forth in the CEC Warrants. Plaintiffs contend that the anti-dilution provisions of the CEC Warrants were triggered before the merger and, therefore, UEC issued fewer UEC Exchange Warrants to the Plaintiffs than required under the terms of the CEC Warrants and at an exercise price which was higher than required. This case seeks to recover for resulting damages.

---

[3]The recitation of the background facts, to the extent not independently supported herein, is taken primarily from the Complaint. There is no material dispute about the background facts.

In March 2012, all of the Plaintiffs (except Westminster) herein and others brought suit in the Arizona state court (the "Arizona Lawsuit") against the Defendants herein and others. In an Amended Complaint filed in March 2013 in that action (Exhibit A to the Zitter Affirmation), Plaintiffs alleged that UEC failed to include the anti-dilution clauses of the CEC Warrants which were required to be, but were not, included in the UEC Exchange Warrants. That identical claim is asserted by Plaintiffs herein with respect to the same UEC Exchange Warrants, except that the anti-dilution triggering event alleged in the Arizona Lawsuit was different than the triggering event alleged herein. On May 22, 2014, Plaintiffs in the Arizona Lawsuit requested a jury trial (Exhibit B to the Zitter Affirmation). UEC, represented by the same counsel in the Arizona Lawsuit as in this case, did not move to strike the jury request in the Arizona Lawsuit, based upon the provisions of the Draft SPA or otherwise.

After learning during the course of discovery in the Arizona Lawsuit of the basis for the claims ultimately asserted in this case, Plaintiffs in the Arizona Lawsuit moved again to amend the complaint therein to assert those claims. At a hearing held in May 2015, the Arizona court, as set forth in the hearing transcript (Exhibit C to the Zitter Affirmation), denied the motion because the court believed that allowing the amendment at that stage of the Arizona Lawsuit would unduly prolong it. The Arizona court, however, allowed the claims to be pursued in New York. Westminster filed suit on June 1, 2015. The other Plaintiffs filed suit on July 30, 2015. The Court consolidated both cases on August 10, 2015 (Docket No. 21).

Defendants filed their Answers in the case on September 11, 2015 which included a jury request (Exhibit D to the Zitter Affirmation). By letter dated September 25, 2015 signed by Defendants' counsel, the parties informed the Court of their agreement that the case was to be tried to a jury and submitted a proposed scheduling order setting forth their agreement that the case be tried to a jury (Exhibit E to the Zitter Affirmation). That agreement was incorporated in the Civil Case Management and Scheduling Order entered herein on October 1, 2015 (Exhibit F to the Zitter Affirmation).

Pursuant to the Scheduling Order, as amended, fact discovery ended on September 30, 2016. Although some discovery took place prior to the commencement of depositions in the beginning of June 2016, virtually all of the document discovery took place in the Arizona Lawsuit. The last deposition in this case took place on September 20, 2016 (Zitter Affirmation, ¶7). Although Defendants admit that they had been considering a motion to withdraw their jury demand for quite some time prior to the completion of fact discovery (Exhibit B to Defendants' Memorandum of Law), they did not bring this motion until October 14, 2016, more than a year after their original jury demand, more than a year after their agreement with Plaintiffs that the case should proceed as a jury trial, and only after completion of fact discovery. Defendants thereby allowed themselves to evaluate, before bringing this motion, whether their case would more likely prevail with a judge or a jury, although the Federal Rules require the selection of a judge or a jury as the trier of fact before discovery commences.

Point 1

Defendants Have Not Established That
Any Party Waived Its Right To A Jury Trial

In order to prevail on their motion to withdraw the jury demand based upon an alleged

prior waiver of the right to a jury trial, Defendants must establish, clearly and unequivocally, that

the parties in fact waived their right to a jury. Defendants have the burden of proof to establish

such waiver.[4] There is a strong presumption against the waiver of the right to a jury trial because

it is a constitutional right. As the court stated in *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393,

81 L. Ed. 1177, 57 S. Ct. 809 (1937):

> Because the Seventh Amendment right to a jury trial is fundamen-
> tal, however, a court should "indulge every reasonable presumption
> against a waiver."

See also: *Wright v. Lewis,* 76 F.3d 57, 60 (2d Cir. 1996) ("Finally, we note that jurisprudence of

both the Supreme Court and this court reflect a presumption against waiver of one's right to a

jury trial."); *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977)

(presumption exists against waiver of right to jury trial); *Heyman v. Kline*, 456 F.2d 123, 129 (2d

---

[4]9 Wright and Miller, *Federal Practice and Procedure: Civil 3d*, §2321 (2008 Ed.)
("Because there is a presumption against waiver of jury trial, it has been held that the burden of
proof falls on the party seeking to enforce the waiver."); *Topline Solutions, Inc. v. Sandler Sys.,*
131 F. Supp. 3d 435 (D. Md. 2015) ("The Fourth Circuit places the burden of proving knowing
and intelligent waiver on the party seeking to enforce the waiver."); *Crescent Res. Litig. Trust by
& ex rel. Bensimon v. Duke Energy Corp.*, 2013 U.S. Dist. LEXIS 62676 at *26 (W.D. Texas
May 2, 2013) ("The Court finds, in light of the presumption against waiver, and the
constitutional dimension of the right, the burden is upon the party seeking to enforce the waiver,
i.e, Duke.")

Cir. 1972)") ("The right to a jury trial is too important [ ] and the usual procedure for the waiver

of the right too clearly set out by the Civil Rules for the courts to find a knowing and voluntary

relinquishment of the right in a doubtful situation."); *Tanvir v. Laporte*, 169 F.R.D. 292, 294

(S.D.N.Y. 1996) ("Because a waiver should never be lightly inferred, the 'conduct said to

constitute a waiver must be clear and unequivocal.' *Tray-Wrap, Inc.*, 984 F.2d at 68.") (waiver

denied).

The unsigned Draft SPA purporting to include a jury waiver simply does not meet

Defendants' burden of proving that all the parties knowingly and voluntarily waived their right to

a jury.[5] It is certainly reasonable to presume that if the parties did not sign the Draft SPA, they

did not agree to waive a jury.[6] Further, with respect to Westminster, because those warrants were

issued to Westminster as a fee for investment banking services, and not because of any monetary

investment by Westminster in CEC (O'Shea Affirmation, ¶3), Defendants have not, and cannot,

proffer any agreement in which Westminster, and CEC with respect to Westminster's claims,

waived their rights to a jury. Because UEC's designation of a jury at the outset of this case was

entirely proper, it cannot be withdrawn without Plaintiffs' consent (Fed. R. Civ. P. Rule 38(d)).

---

[5]Defendants argue that Plaintiffs' rights against Defendants arise under the Draft SPA (Defendants' Memorandum of Law, p. 5). That is untrue. Plaintiffs' claims, as alleged in the complaints, arise under the Warrants. The Draft SPA (or any other SPA) is not mentioned in the complaints. In alleging venue, counsel for Plaintiffs in this case, who was not involved in the Arizona Lawsuit, quoted from what apparently was an unsigned draft of a securities purchase agreement. Such quotation by counsel certainly does not establish a signed, knowing and intentional jury waiver by the parties, as is Defendants' burden to prove on this motion.

[6]As noted above, the Court is required to entertain every reasonable presumption against the waiver of a jury.

7

Even If, Contrary To Fact, The Draft SPA Contained
An Enforceable Jury Waiver Provision, Defendants Thereafter
Relinquished Any Right To Withdraw Their Jury Demand

In addition to the provisions in the Draft SPA which provide for a jury waiver, the Draft

SPA also contemplates that the parties may thereafter waive the benefits of that provision and/or,

by subsequent agreement, supersede the jury waiver and proceed to trial with a jury. Thus ¶5.5 of

the Draft SPA provides:

> 5.5 Amendments; Waivers. No provision of this
> Agreement may be waived, modified, supplemented or amended
> except in a written instrument signed, in the case of an amendment,
> by the Company and the Purchasers of at least 66 2/3% in interest
> of the Securities still held by Purchasers or, in the case of a waiver,
> by the party against whom enforcement of any such waived
> provision is sought.

As hereafter set forth, by filing a written demand, signed by their attorney, for a jury in their

Answer, Defendants, in accordance with ¶5.5 of the Draft SPA, waived their rights under the jury

waiver. The parties subsequent agreement in their joint letter to the Court on September 25, 2015

(Exhibit E to the Zitter Affirmation) that the case should proceed as a jury trial also constitutes a

contractual modification or amendment of any original jury waiver.[7]

---

[7]The fact that the jury-waiver provision in the Draft SPA provides that it is "irrevocable"
does not deprive the parties of the ability subsequently to waive or supercede the jury waiver
provision, as Defendants have done in this case. It is well settled that, as a matter of law, parties
may waive or amend a non-waiver provision. 8 Corbin, *Contracts*, §40.13 (1999 ed.) ("Parties to
a contract cannot, even by an express provision in that contract, deprive themselves of the power

Defendants filed a written demand for a jury, signed by their attorney, in their Answer filed on September 11, 2015. Defendants' demand for a jury was knowing and intentional because, at the time of the demand, Defendants' counsel stated that he was unaware of the jury waiver contained in the Draft SPA. That jury demand, therefore, reflected Defendants' counsels' determination at that time that his case was better presented to a jury, rather than a judge. Such demand, therefore, constituted a waiver of any rights under any jury waiver provision of the Draft SPA. Waiver does not require that Defendants' attorney actually knew about the jury waiver clause in the Draft SPA when he filed the jury demand. Constructive knowledge of the jury waiver provision, as undisputably exists in this case, is all that is required for the jury demand to constitute waiver of the jury waiver provision in the Draft SPA.

Waiver is "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938). It "requires (1) the existence at the time of the waiver a right, privilege, advantage, or benefit which may be waived; (2) actual or **constructive** knowledge thereof; and (3) an intention to relinquish such right,

---

to alter or vary or discharge it by subsequent agreement. . . . Similarly a provision that an express condition of a promise or promises in the contract cannot be eliminated by waiver, or by conduct constituting an estoppel, is wholly ineffective.") It is well settled that parties may waive a non-waiver clause. *Lee v. Wright*, 108 A.D.2d 678, 680, 485 N.Y.S.2d 543, 544 (App. Div. 1985); *Dice v. Inwood Hills Condo.*, 237 A.D.2d 403, 404, 655 N.Y.S.2d 562, 562-63 (App. Div. 1997)("the existence of a nonwaiver clause does not in itself preclude waiver of a contract clause"); *Atherton v. Online Video Network, Inc.*, 274 F. Supp. 2d 592, 595-96 (S.D.N.Y. 2003) Furthermore, "The word 'irrevocable,'...does not mean that the agreement [ ] is irrevocable by the mutual agreement or consent of the parties." *Zimmerman v. Cohen,* 236 N.Y. 15, 20, 139 N.E. 764, 766 (1923).

privilege, advantage, or benefit." *In re Westchester Tank Fabricators, Ltd.*, 207 B.R. 391, 399

(Bankr. E.D.N.Y. 1997) (bold added), *Charell v. Gonzalez*, 241 B.R. 67, 75 (Bankr. S.D.N.Y.

1999). Waiver may be implied from conduct of a party which is "so inconsistent with his purpose

to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary.'" *Id.*


Even if counsel for UEC "was not consciously aware of and simply overlooked this

provision," (Defendant's Memorandum of Law, p. 3) and lacked actual knowledge of the jury

waiver provision in the Draft SPA at the time he filed the jury demand, constructive knowledge

certainly existed. "Where a person is under a duty to inquire before he takes action, he may be

said to be under a 'bounden duty to know' those facts which a reasonable inquiry would

disclose." *S. & E. Motor Hire Corp. v. N.Y. Indem. Co.*, 255 N.Y. 69, 72-74, 174 N.E. 65, 66-67

(1930). Counsel answering a complaint is unquestionably on notice of litigation-related

provisions in the documents upon which Defendants assert that the claims and jurisdiction are

based (Defendants' Memorandum of Law, p. 2). Particularly because jury waiver provisions are

not uncommon in sophisticated commercial transactions, as this case involves, Defendants were

on inquiry notice of that provision in the Draft SPA. Constructive knowledge is sufficient to

establish waiver under New York law, particularly, as here, where there are facts that ought to

have aroused inquiry (*Id, Chase Manhattan Bank, N.A. v. Aldridge,* 91 Civ. 2649 (PKL), 1994

U.S. Dist. LEXIS 3331, at *10-11 (S.D.N.Y. Mar. 18, 1994)). In cases like this one, where a

party claimed no knowledge of its clearly documented rights, arguments that the rights were not

known have been rejected as meritless. *See In re THW Enters.*, 89 B.R. 351, 356 (Bankr.

S.D.N.Y. 1988) (notice of debtor's bankruptcy constructively imputed the knowledge of the Code and its provisions to the lessor.)

Defendants' constructive knowledge of the jury waiver provision in the Draft SPA is further established because Defendants, represented by the same counsel as in this case, have been litigating the Draft SPA for many years in the Arizona Lawsuit. Indeed, the Draft SPA attached to Defendants' Memorandum of Law bears Bates Numbers which establish that it was produced in the Arizona Lawsuit.

In March 2013, in an Amended Complaint, Plaintiffs in the Arizona Lawsuit made claims involving the anti-dilution provisions of the same CEC Warrants and the lack of said provisions in the same UEC Exchange Warrants at issue in this case (Exhibit A to the Zitter Affirmation). Those claims in the Arizona Lawsuit are exactly the claims asserted herein, albeit involving different events which triggered the anti-dilution provisions and caused damages. Plaintiffs in the Arizona Lawsuit filed a jury demand in May 2014 (see Exhibit B to the Zitter Affirmation) to which Defendants never objected (O'Shea Affirmation, ¶4). Defendants are hard pressed to claim that they were unaware of the jury waiver provisions in a document which had been the subject of litigation in Arizona for more than two years prior to the institution of this lawsuit. As a result of the jury demand in the Arizona Lawsuit, more than a year before Defendants' jury demand herein, Defendants were certainly, at a minimum, put on inquiry regarding the availability of a

jury under the Draft SPA. If Defendants did not have actual knowledge of the jury waiver in the Draft SPA, they certainly had constructive knowledge thereof.

Defendants, therefore, have waived any right to withdraw their jury demand. The jury waiver provision in the Draft SPA is itself, by the terms of that document, subject to waiver. Defendants certainly had constructive knowledge of that provision when they demanded a jury in this case, and the demand for a jury in this case was a knowing and intentional selection by Defendants' attorney, inconsistent with their claimed rights under the Draft SPA. Thus all the elements required for Defendants' waiver of the jury waiver provision in the Draft SPA have been established.

Federal courts in nearly identical circumstances have held that a demand for trial by jury waives a contractual jury-waiver provision. See *Wendy's of Bowling Green, Inc. v. Marsh USA, Inc.*, No. 3-10-1043, 2012 WL 370486, at *6 (M.D. Tenn. Feb. 3, 2012) (Defendant waived the right to rely on jury-waiver provision by asking for a jury in its Answer, and citing to Fed.R.Civ.P 38(d), ruling defendant could not withdraw its request for a jury without plaintiff's consent); *Coleman v. Lazy Days RV Ctr., Inc.*, 2007 WL 2696789, at *2 (M.D. Fla. Sept. 12, 2007)(defendant's agreement to jury trial in the Case Management Report waived right to enforce prior jury-waiver provision.) Even the checking of a jury demand box on a civil cover sheet has been found to be a clear and decisive waiver of a contractual right to a bench trial. *Kirsch v. Brightstar Corp.*, 2014 WL 5166527, at *3–4 (N.D. Ill. Oct. 10, 2014) ("Plaintiff's

actions throughout the entire course of this litigation led both [Defendant] and the Court to believe that he intended to have this case tried before a jury. Because Plaintiff has taken actions inconsistent with his contractual right to a bench trial, the Court finds that Plaintiff has waived that contractual right.") Moreover, New York law compels the same conclusion. *Sapp v. Propeller Co. LLC*, 12 A.D.3d 218, 219, 784 N.Y.S.2d 532, 533 (2004) ("Defendants waived the protection of [the jury-waiver] clause by affirmatively demanding a jury trial and then failing to seek to withdraw the demand until nine months later.")

As noted above, the Draft SPA contemplates waiver of any of its provisions by written instrument by the party who would otherwise enforce the provision (Draft SPA, §5.5). Defendant's Answer, the joint letter, signed by Defendants' counsel, submitted to the Court on September 25, 2015 memorializing the parties' agreement to a jury trial, the proposed scheduling order submitted therewith and the Scheduling Order actually entered are signed written instruments which clearly waive the protection of the jury-waiver. These alone, and certainly coupled with a year of litigation under the assumption of a jury trial, qualify as conduct "so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary."(*Charell v. Gonzalez, supra,* at 75) In the context of determining whether a litigant waived his right to enforce an arbitration provision (which involves waiver of a right to a jury), New York courts have ruled that a litigant may not compel arbitration when its intentional use of the courts manifested a preference clearly inconsistent with the claim that the parties were obligated to arbitrate. *Sherrill v. Grayco Builders, Inc.*, 64 N.Y.2d 261, 272, 486 N.Y.S.2d 159, 162-63, 475 N.E.2d 772, 775-76 (1985); *Stark v Molod Spitz DeSantis & Stark,*

*P.C.,* 9 NY3d 59, 66, 876 N.E.2d 903, 845 N.Y.S.2d 217 (2007). Likewise, Defendant's manifest preference for a jury trial waived its right to enforce the jury-waiver provision.

In addition to waiver, in a joint signed submission to the Court on September 25, 2016, the parties agreed that this case would proceed as a jury trial, consistent with Defendants' initial jury demand (Exhibit E to the Zitter Affirmation). That agreement was included by the Court in its Civil Case Management and Scheduling Order entered on October 1, 2015 which ordered that the case proceed as a jury trial (Exhibit F to the Zitter Affirmation). That agreement, in accordance with the terms of the Draft SPA, is an independent agreement which supersedes any rights Defendants may have had (they in fact had none) under the jury waiver provision contained in the unsigned Draft SPA and compels denial of the motion to withdraw.

<u>Point 3</u>

The Court Should Not Permit Defendants To
Change Their Trial Strategy By Changing The
<u>Trier Of Fact After The Close Of Fact Discovery</u>

Under the Federal Rules, parties are required to designate a judge or a jury as the trier of fact at the inception of the case. Fed.R.Civ.P. Rule 38(b). Thus parties are required to make a strategic decision before discovery begins whether they are more likely to prevail with a judge or a jury. As noted above, Defendants' counsel in this case, who states that he was unaware of the jury waiver in the Draft SPA at the inception of this case, made the intentional strategic decision

prior to the commencement of discovery, that Defendants' case would more likely resonate with a jury rather than with a judge.

The Second Circuit has emphasized the notice function of Rule 38(d), noting that the initial demand (or lack thereof) puts the other parties on notice at an early stage in the litigation that a jury (or the court) will be trying the issues. *Rosen v. Dick*, 639 F.2d 82, 96 (Rule 38 . . . "is meant to ensure that the parties know at an early stage in the litigation who the fact finder will be.") This district, in *Berisford Capital Corp. v. Syncom Corp.*, 650 F. Supp. 999, 1001 (S.D.N.Y. 1987), has followed the Circuit court's lead as well:

> The goal of Rule 38's requirement of a timely jury demand and, failing that, of automatic waiver, is to provide adequate notice to the parties of whether they will appear before a court or a jury. The time limits allow the parties to make that determination within ten days after the service of the last pleading directed to the issue on which a jury trial may be demanded. The parties may then rely on the Rule's explicit terms in presuming that the fact-finder will not thereafter change for the claims raised in the complaint.

See also: *Walker v. Edison Chouest Offshore, L.L.C.*, 2006 WL 2212464, at *2 (S.D.N.Y. Aug. 3, 2006); *Jones v. Hirschfeld*, No. 01 CIV. 7585 (PKL), 2003 WL 21415323, at *5 (S.D.N.Y. June 19, 2003) ("Numerous Courts in this Circuit have noted the importance for both the parties and the Court to know at an early stage in the litigation who the fact finder will be.") Once Defendants demanded a jury in this case, both parties understood that the fact-finder would be a jury. Allowing Defendants to change the trier of fact more than a year after demanding a jury frustrates the purpose of Rule 38 and is manifestly unfair.

Rule 1 of the Federal Rules of Civil Procedure instructs federal judges that the Rules should be "*construed, administered* and employed by the court to secure the *just*, speedy and inexpensive determination of every action" (italics added). The drafters' use of those italicised words clearly directs trial judges to construe and administer the Rules in order that justice may be done in a given case. *Scherer v. Equitable Life Assur. Soc'y of the United States*, 2004 U.S. Dist. LEXIS 18875, at *40 (S.D.N.Y. Sep. 17, 2004) (administering and construing Rule 8(d) in order that justice be done.) See also *G. Heileman Brewing Co. v. Joseph Oat Corp.,* 871 F.2d 648, 652 (7th Cir. 1989) ("We must remember that Rule 1 states, with unmistakable clarity, that the Federal Rules of Civil Procedure 'shall be construed to secure the just, speedy, and inexpensive determination of every action.' This language explicitly indicates that the federal rules are to be liberally construed.)

Defendants admittedly have been considering a motion to withdraw their jury demand for quite some time. As Defendants counsel stated in an email on September 22, 2016[8]:

> As I mentioned to you some time ago, we are considering
> withdrawal of our request for a jury trial

Defendants counsel has been considering that possibility since shortly after the deposition of UEC's President, Amir Adnani, on June 2, 2016 (see Zitter Affirmation, ¶8). Yet, Defendants

---

[8]Exhibit B to Defendants' Memorandum of Law.

waited until the close of fact discovery to bring their motion to withdraw their jury demand.[9]  By

first moving to withdraw their jury demand after the close of fact discovery, when Defendants

admittedly have known for quite some time that the Draft SPA allegedly contained a waiver of

the right to a jury trial, Defendants have improperly arrogated to themselves - and now seek to

have the Court enforce - an option to determine after the close of fact discovery whether the trier

of fact in  this case should be a jury or a judge.


Had the testimony developed as Defendants apparently believed it would at the beginning

of the case (after having litigated the Arizona Lawsuit for over three years), Defendants would

have continued this matter as a jury trial, to which Plaintiffs consented at the beginning of the

case (by not moving to strike the jury demand and by agreeing to a jury in a joint letter to the

Court which was incorporated in the Court Order entered on October 1, 2015). If the testimony

did not develop as Defendants anticipated, which it did not, then Defendants could claim the

benefits of the alleged jury waiver in the Draft SPA and have the case proceed before a judge.

That is manifestly unfair and the Court should not allow Defendants the option to change the trier

of fact at this time. *Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc.,* 863 F. Supp. 2d

118, 121 (D. Mass. 2012) ("It would undermine the Federal Rules of Civil Procedure to allow a

party to renege on its jury demand shortly before trial if and when it perceives that it may be

---

[9]According to the Scheduling Order, fact discovery terminated on September 30, 2016.
The last actual discovery, the Kettell deposition, occurred on September 20, 2016. On September
22, 2016, Defendants' counsel requested that Plaintiffs consent to the withdrawal of the jury
demand which they had been considering for some time. Defendants filed this motion to
withdraw their jury demand on October 14, 2016 (Zitter Affirmation ¶9).

better off with a bench trial.") (withdrawal of jury demand denied based upon equitable

grounds).[10] *Kahn v. GMC*, 865 F. Supp. 210, 214 (S.D.N.Y. 1994) (conditional waiver of jury

demand requiring specific judge was not enforceable, as change of fact-finder to jury would have

prejudiced opposing party).

The testimony did not develop as Defendants had hoped. At the very beginning of this

case, before Defendants filed their Answer, Defendants sought to dismiss the Complaint, as a

matter of law, based upon an alleged novation (Docket No. 9).[11] Although the Defendants

---

[10]The court in *Landmark* stated at p. 121: "This Court is unaware of any case in which a party has been found to have waived or forfeited, or has been estopped from enforcing, its jury waiver by filing a jury demand. On the other hand, research uncovers a mere handful of circumstances in which a party with an enforceable jury waiver has filed a jury demand only to withdraw it shortly before trial. **The absence of precedent, therefore, speaks more to a dearth of similar circumstances than to the propriety of such a rule.**" (bold added). The Court did not mention the waiver cases cited in this memorandum of law at p. 12-13.

[11]Defendants' novation motion alleged, in substance, that Plaintiffs knew before the merger of all the terms of the UEC Exchange Warrants, including their lack of any anti-dilution provisions. Plaintiffs' acceptance of the UEC Exchange Warrants, with their lack of anti-dilution provisions and other terms which differed from the CEC Warrants, after the merger, therefore, according to Defendants, constituted a novation so that Plaintiffs were no longer entitled to have the terms of the CEC Warrants included in the UEC Exchange Warrants. In its Memorandum of Law in support of the motion (Document No. 9) Defendants stated (Exhibit G to the Zitter Affirmation, p. 15-16): "Plaintiff was aware of the Concentric Warrants, the Merger Agreement, the UEC Exchange Warrants and the S-4 and knew exactly what it was getting in the UEC Exchange Warrants." The S-4 is a document which UEC was required to file in connection with, and prior to, the merger to disclose, among other things, the terms of the UEC Exchange Warrants.
    At his deposition on June 2, 2016, Amir Adnani, UEC's president, testified under oath that Exhibit 10.39 on the S-4 list of Exhibits captioned "Form of Warrant Certificate" was the form of the UEC Exchange Warrant which the Plaintiffs were to receive upon closing. (Exhibit H to the Zitter Affirmation). Exhibit 10.39 in turn referred to note 23 which in turn referred back to the Form S-3 filed by UEC on July 14, 2009 as the place where the UEC Exchange Warrant certificate was publicly filed (Exhibit I to the Zitter Affirmation). Neither Mr. Adnani nor his

ultimately withdrew their motion, the facts, as set forth in the previous note, which they

originally believed supported novation and dictated that Defendants would be better off with a

jury as the trier of fact, did not develop as Defendants had assumed. To allow Defendants to

change their trial strategy by changing their choice of the trier of fact after close of fact discovery,

after the testimony did not comport with Defendants' expectations, is not only contrary to the

Federal Rules which require the trier of fact to be designated at the beginning of the case, but

offends the fundamental principles of equity that animate the Federal Rules.

---

counsel was able to produce the publicly filed form of the UEC Exchange Warrants which
Plaintiffs were going to receive. Indeed, a simple check of the SEC.gov web site demonstrates
conclusively that the form of UEC Exchange Warrant which the CEC Warrant holders were
going to receive in the merger was not appended to the S-4, the S-3 or otherwise publicly filed.

When, after the lunch break, they finally did produce a form of UEC Exchange Warrant
dated 2011, Adnani testified, incredibly, that such form was filed in July 2009 (Exhibit J to the
Zitter Affirmation). It was the first time UEC and its counsel became aware that the Form of
UEC Exchange Warrants which Plaintiffs were to receive upon closing of the merger was never
publicly filed prior to the merger, in violation of applicable rules and regulations.

After realizing that the form of UEC Exchange Warrant had never been publicly filed
prior to the closing, Mr. Adnani, when he returned his signed deposition transcript, amended his
testimony and admitted that the form of UEC Exchange Warrant which his counsel had produced
after the lunch break was not filed with the July 2009 S-3, but a completely different warrant
from another deal, which allegedly had the same terms os the proposed UEC Exchange Warrants
was filed. (Exhibit K to the Zitter Affirmation). A review of the S-3 filed in July 2009 shows that
the attached warrant has an issue date of June 26, 2009 and an expiration date of June 26, 2011,
prior to the merger taking effect (Exhibit L to the Zitter Affirmation). It, therefore, did not have
the same terms as the UEC Exchange Warrants proposed to be issued when the merger closed.

Had UEC complied with its legal obligation to file publicly a form of the proposed
exchange warrant, Defendants would have had an appealing presentation to a jury - we [i.e.,
UEC] told the Plaintiffs before the merger exactly what they were getting. Why did it take
Plaintiffs so long to complaint about it? Plaintiffs believe that Defendants first learned at the
Adnani deposition that no form of the proposed UEC Exchange Warrant was ever filed. Plaintiffs
believe that fact, and Adnani's changed testimony in that regard, is what caused Defendants to
reconsider their choice of a jury as the trier of fact. Thus their current motion is an intentional
change in trial strategy, not simply an inadvertent overlooking of the jury waiver provisions of
the Draft SPA, which Defendants sought to rectify as soon as they learned about it.

## Point 4

## Defendants Are Not Entitled To Withdraw Their Jury Demand

The legal authority cited by Defendants in their Memorandum of Law, none of which are Second Circuit or Southern District cases, does not compel this Court to allow Defendants to withdraw their jury demand. In *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961 (Defendants' Memorandum of Law, p. 5), the court determined that a jury demand for issues later determined to be equitable, not legal, could be withdrawn over objection. Thus there was no right to a jury which is simply not available on equitable claims. In *Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc.,* 863 F. Supp. 2d 118 (D. Mass. 2012) the court held that despite a prior contractual jury waiver, equitable considerations trumped the prior jury waiver and did not permit the withdrawal of the jury demand. In *Quinn Const., Inc. v. Skanska USA Bldg., Inc.*, 2010 WL 4909587, at *2–4 (E.D. Pa. Nov. 30, 2010) the demand sought to be relied upon was filed by a party *who had not signed a waiver*, and the opposing party who had signed a waiver could not later withhold consent to withdrawal of demand. In this case, there is no evidence that any party signed a waiver. Nor did Quinn deal with the equitable considerations as obtain herein; *Engines, Inc. v. MAN Engines & Components, Inc.*, 2012 WL 589558, at *1–3 (D.N.J. Feb. 22, 2012) also involved a signed jury waiver lacking in this case.

Defendants properly filed a jury demand at the outset of this case in full compliance with the procedures set forth in Rule 38. Although Plaintiffs did not demand a jury in their Complaints, they were entitled to rely upon Defendants demanding a jury in their Answer.

20

*Dell'Orfano v. Romano*, 962 F.2d 199, 202 (2d Cir. 1992) ("A [party] is entitled to rely on

[another party's] jury demand to preserve his own right to a jury trial . . ."); *Rosen v. Dick*, 639

F.2d 82, 87 (2d Cir. 1980) ("Undoubtedly, Rule 38 embodies the equitable principles of

reasonable reliance . . ."). But in addition to its reasonable reliance on Defendants' jury demand,

Plaintiffs independently designated a jury within fourteen days after the last pleading directed to

the issue was served, in accordance with Rule 38(b)(1). Defendants' Answer was served on

September 11, 2015. On September 25, 2015, fourteen days later, the parties agreed in writing

that the trial would be by jury and filed such agreement with the Court.[12]


Because a jury demand was properly filed in this case, and Plaintiffs both reasonably

relied on that demand and filed their own jury demand, Defendants' jury demand may not be

withdrawn under the terms of Rule 38(d). Because there is no question that a federal right to a

jury applies in this case, Rule 39(a)(2) provides no basis for the Court to allow Defendants to

withdraw their jury demand.

---

[12]Even though Plaintiffs' agreement in writing to a jury on September 25, 2015 was not formally a "demand for a jury," the language employed by Rule 38(b), the agreement served the exact same purpose as a demand. It was a clear indication that Plaintiffs wanted a jury as the trier of fact and made Defendants aware of that. There is no need to employ a strict literal requirement that the designation of a jury be in a document entitled "Demand for a Jury." In *Kahn v. GMC, supra*, at 212 the court stated that "the cases interpreting Fed. R. Civ. P. 39(a)(1) have taken a less literal approach." Such a "less literal approach" is also appropriate so that Plaintiffs' agreement to a jury also constituted Plaintiffs' timely demand for a jury.

## Conclusion

For the foregoing reasons, the Court should deny Defendants' motion to withdraw their jury demand.

Respectfully submitted,
Law Offices of Kenneth A. Zitter

By_____

Kenneth A. Zitter
Attorneys for Plaintiffs
260 Madison Avenue, 18th Floor
New York, New York 10016
212-532-8000
KAZ-3195