# DICKINSON WRIGHT PLLC



ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/7/17

1850 NORTH CENTRAL AVENUE, SUITE 1400
PHOENIX, AZ 85004-4568
TELEPHONE (602) 285-5000
FACSIMILE (844) 670-6009
http://www.dickinsonwright.com

MICHAEL S. RUBIN
MRubin@dickinsonwright.com
(602) 285-5008

RECEIVED MAR 07 2017 CHAMBERS OF JUDGE MARRERO

March 7, 2017

**VIA U.S. MAIL & FACSIMILE (212) 805-6382**

The Honorable Victor Marrero
Judge, United States District Court
United States District Courthouse
500 Pearl Street
New York, NY 10007

    Re:    <u>Westminster Securities Corp., et al. v. Uranium Energy Corp. et al.</u>
             Case No. 1:15-cv-04181-(VM)(GWG)

Dear Judge Marrero:

This firm represents Defendants in the above-captioned matter. In conformity with § II(A)(2) of the Court's Individual Practices guidelines, this letter is in reply to the letter dated March 3, 2017, from Plaintiff's counsel, Mr. Zitter, regarding Plaintiffs' proposed Motion to Dismiss certain affirmative defenses previously asserted by Defendants. As briefly summarized below, the defenses asserted by Defendants were appropriately asserted and remain to be resolved (if and as necessary). Any formal motion on this issue should be denied, or deferred until trial.

Plaintiffs' argument is based upon the false premise, asserted in paragraph 2 of Mr. Zitter's letter, that, following the merger of Concentric Energy Corporation ("CEC") into a new entity, the replacement warrants issued by Uranium Energy Corporation ("UEC") to replace the CEC warrants were required to (and therefore must be deemed to) contain precisely the same terms and conditions as the CEC warrants. Nothing in the agreements leading up to the merger imposes any such requirement; and the UEC replacement warrants, issued to Plaintiffs in 2011, do not contain the "missing" provisions upon which Plaintiffs now seek to assert claims, but about which they said nothing at the time.

Plaintiffs' letter is also based upon the false premise that certain pre-merger issuances of stock by CEC to officers of the company as compensation constituted "dilutive issuances," allegedly triggering certain rights of Plaintiffs under the CEC warrants. Again, despite prior notice to Plaintiffs of all of the facts and circumstances regarding the transactions now alleged to have constituted "dilutive issuances," both before the merger transaction in 2011, and before the undisputed expiration of all warrants as of December 31, 2012, Plaintiffs made no objection to the number or the exercise price of the warrants which were in fact issued to them by UEC as replacement warrants until well after the warrants had expired. These circumstances provide the context for the following brief summary of the continued viability of the challenged defenses.

DICKINSON WRIGHT PLLC

The Honorable Victor Marrero
March 7, 2017
Page 2

**Defendants' Second Affirmative Defense:** This defense is based upon the undisputed fact that the Plaintiffs' warrants expired by their terms on December 31, 2012, and that no action was taken by Plaintiffs to exercise any of them or to assert any claimed right to an "automatic" exercise, despite prior notice to Plaintiffs of all of the facts and circumstances now giving rise to their current claims. Specifically, Plaintiffs contend that they should have received replacement warrants upon different terms than they in fact did, which would, allegedly, have led to an automatic, cashless exercise by the termination date or before. However, Plaintiffs' claimed right to terms providing a "cashless" or "automatic" exercise of the replacement warrants remains to be adjudicated at trial. Defendants' position remains that all rights of Plaintiffs under the warrants (if any) expired as of December 31, 2012, and therefore provide no basis for relief in this action. Thus, Defendants' Second Affirmative Defense remains "at play" as to any claims by Plaintiffs that any rights under the warrants survived their expiration.

**Defendants' Fourth Affirmative Defense:** Defendants' Fourth Affirmative Defense is that "Defendants allege that they lack sufficient knowledge or information as to whether any and all conditions precedent have been met, including, but not limited to a timely and definite tender." Defendants' Answer to Westminster's Amended Complaint (Doc. 22) pg. 5, ¶ 37. Plaintiffs' March 3 letter complains that the Defendants have "specified" no particular condition precedent as a basis for this defense. However, the Answer (as quoted above) expressly identifies the Plaintiffs' failure to exercise any warrant rights prior to the expiration of the warrants as a failure to meet a condition precedent to rights under the warrants.

**Defendants' Fifth Affirmative Defense:** Defendants' Fifth Affirmative Defense (*Id.* at pg. 6, ¶38) asserts that Plaintiffs "failed to timely exercise any rights" they may have had with respect to the warrants. As was clearly explained by Defendants' counsel in its March 1, 2017 letter to Plaintiffs' counsel (copy attached hereto as Exhibit A), the Fifth Affirmative Defense is based simply upon "Plaintiffs' failure to exercise their rights prior to the expiration of the UEC exchange warrants on December 31, 2012." By any name or characterization, that defense remains in the case.

The suggestion in Plaintiffs' counsel's March 3 letter to the Court adverting to some issue regarding "dissenters' rights" as the basis for the Fifth Affirmative Defense is simply wrong, and contrary to the Defendants' prior explanation of the basis of the defense as quoted above. Any issue regarding "dissenters' rights" is simply irrelevant to this defense.

**Sixth Affirmative Defense**: According to Plaintiffs' counsel's March 3 letter to the Court, Plaintiffs' specific objection to the Sixth Affirmative Defense is that it allegedly improperly invokes Section 2(d) of the CEC warrants. That section provides that, in order to comply with SEC rules and regulations, there is a limit on the number of shares which could be issued upon exercise of any warrant(s). Plaintiffs assert that this limitation (which they do not dispute) does not constrain their claim for damages based on the alleged lost "value" of the warrants which they claim they should have received, numbering in the millions. Plaintiffs' argument simply ignores the obvious response that, all other issues aside, Plaintiffs could not have suffered a loss based upon a number of warrants which, if exercised, would have caused the SEC-imposed limits on share issuance to be exceeded. Thus, Section 2(d) of the CEC warrants

provides a limitation and a defense to Plaintiffs' claims, whether for specific performance or for damages.

**Tenth Affirmative Defense**: Defendants' Tenth Affirmative Defense originally invoked *res judicata*, collateral estoppel and improper claim-splitting. Plaintiffs' counsel's March 3 letter accurately reports that the Defendants have now limited the Tenth Affirmative Defense to *res judicata* only. However, Plaintiffs' letter mischaracterizes the remaining *res judicata* defense.

According to Plaintiffs' March 3 letter to this Court, the Tenth Affirmative Defense is "presumably" based on Plaintiffs' failure to assert claims in the Arizona action which Plaintiffs are now asserting here. This is not accurate.

Plaintiffs in this case asserted claims against these Defendants in a prior action in the state courts of Arizona, which was settled and dismissed with prejudice. The claims in the Arizona action arose in part from the same basic facts and circumstances giving rise to Plaintiffs' claims in this action. The Settlement and Release Agreement, and the resulting Order of the Arizona Court, dismissed the entirety of the Arizona action, with prejudice, <u>with the sole exception</u> of "any claims in the New York lawsuit [this action] . . . based upon the alleged failure of UEC and CEC to include certain provisions of the Concentric warrants in the replacement warrants . . . ." Only those limited claims were not released.

Accordingly, only claims which are based upon failure to include certain provisions of the Concentric warrants in the UEC replacement warrants <u>which were expressly asserted in this action at the time of the release</u> are preserved and not precluded by *res judicata*. Conversely, however, any and all claims by Plaintiffs which were <u>not</u> originally asserted in this action are barred by the settlement, the release, the Order of the Arizona court, and, thus, by the principle of *res judicata*. Accordingly, the Tenth Affirmative Defense of *res judicata* remains potentially pertinent in this action to bar any attempt by Plaintiffs to avoid the preclusive effect of the prior settlement and dismissal of the Arizona action. Specifically, that resolution permitted the continued pursuit in this action of <u>only</u> the claim by Plaintiffs that the UEC replacement warrants did not repeat the provisions in the CEC warrants that provided automatic cashless exercise of the warrants upon termination. (*See* Complaint in Cause No. 15-CV-06087, Doc. 1, pg.8, ¶18). The Tenth Affirmative Defense of *res judicata* thus remains viable and necessary to protect Defendants against any attempt by Plaintiffs to avoid the claim preclusive effects of the settlement, release and with-prejudice dismissal order in the Arizona action.

For the foregoing reasons, Defendants respectfully request the Court to deny Plaintiffs' efforts to eliminate proper and properly asserted affirmative defenses, which remain at least potentially relevant to the claims which are or may be asserted by Plaintiffs at trial.

DATED this 7 day of March 2017.

DICKINSON WRIGHT PLLC

By: *[signature]*

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by *Defendants*.

SO ORDERED.

3-7-17
DATE    VICTOR MARRERO, U.S.D.J.