

1850 NORTH CENTRAL AVENUE, SUITE 1400
PHOENIX, AZ 85004-4568
TELEPHONE: (602) 285-5000
FACSIMILE: (844) 670-6009
http://www.dickinsonwright.com

MICHAEL S. RUBIN
MRubin@dickinsonwright.com
(602) 285-5008

March 3, 2017



**VIA U.S. MAIL & FACSIMILE (212) 805-6382**

Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    Westminster Securities Corp., et al. v. Uranium Energy Corp. et al.
            Case No. 1:15-cv-04181-VM

Dear Judge Marrero:

       The defendants in the above-referenced matter, Uranium Energy Corporation and UEC Concentric Merge Corporation (collectively "UEC" or "Defendants"), hereby request a Pre-Motion Conference, pursuant to Rule II (A) of your Individual Practices. The Defendants propose to file a case-dispositive motion on Plaintiffs' claims, which are for breach of contract and, alternatively, specific performance, based upon common stock purchase warrants issued by Concentric Energy Corporation ("CEC") in December 2008. In its motion for summary judgment, UEC will demonstrate that Plaintiffs' claims for breach of contract are legally deficient and are not supported by evidence sufficient to withstand a motion for directed verdict. The factual and legal bases for that motion are summarized below.

**Factual Background**

       In December 2008, each of the plaintiffs was issued 4-year warrants in CEC, with an exercise price of $1.00 per share and an expiration date of December 31, 2012. Plaintiffs AWM Holdings LLC, John O'Shea, and David Holbrooke, M.D. received their warrants as a result of their participation in a debenture offering by CEC, a struggling company which owned a series of undeveloped mining claims in Yavapai County, Arizona. Plaintiff Westminster Securities Corp. ("Westminster") received its warrants as compensation for its services as placement agent in connection with the debenture financing. John O'Shea has at all relevant times been the CEO of Westminster.

       The CEC warrants provided that, in the event CEC issued stock during the term of the warrants, other than in an exempt transaction (such as pursuant to a stock incentive plan), at an "effective price" of less than $1.00 per share, the exercise price of the warrants would be adjusted downward and the number of shares that could be purchased at that price would be

adjusted upward. The warrants further provided that, in the event of a merger or other "fundamental transaction," the CEC warrants would be exchanged for new warrants in the surviving entity, exercisable for the balance of the term of the original warrants.

In May 2011, CEC and UEC entered into a merger agreement, providing for the exchange of CEC stock and warrants, at an exchange ratio of .1075, meaning that a shareholder or warrant holder of CEC would receive approximately one UEC share or warrant for every ten shares or warrants in CEC. The exercise price was subject to the same ratio. The public filings for the merger contained a disclosure schedule clearly reflecting all outstanding CEC warrants, identified the holders of those warrants, and their exercise prices. Specifically, the schedule reflected Plaintiffs' CEC warrants at an exercise price of $1.00. After the closing of the merger on September 9, 2011, in accordance with the applicable provision of the CEC warrants and the merger agreement, each CEC warrant holder was given the opportunity to exchange their CEC warrants for UEC warrants, at the exchange ratio of .1075. Thus, each plaintiff received an exchange warrant for the number of $1.00 CEC warrants they held multiplied by .1075, with an exercise price of $9.30 ($1.00 ÷ .1075) and an expiration date of December 31, 2012. None of the Plaintiffs exercised their right to purchase UEC stock pursuant to the terms of the exchange warrants prior to the termination of the warrants.

In their Complaints, Plaintiffs alleged that CEC issued stock to certain officers and directors in August 2009 and April 2010 at $.001 per share, or the "par value" of CEC stock. Plaintiffs contend that those were "dilutive issuances" under the terms of the warrants, entitling them to millions of dollars in damages or millions of shares of stock. Plaintiffs' Complaints further alleged that they did not learn of the allegedly dilutive stock issuances until after the consummation of the CEC-UEC merger.

The evidence produced during discovery refutes Plaintiffs' claims that a "dilutive issuance" took place prior to the merger. Further, the record reflects that Plaintiffs became aware of the allegedly dilutive issuances well before UEC consummated the merger and issued new warrants to the Plaintiffs, and more than a year before the warrants expired by their terms.

The corporate minutes, accounting records, the internal business records of CEC, together with the testimony of company management, reflect that the stock issued to its officers and directors in August 2009 was in lieu of cash compensation, at an effective price of $1.22 per share. Issuance of stock in lieu of cash compensation was perfectly reasonable, given the dire financial condition of the company and its inability to continue to compensate its officers and directors for their efforts in seeking investments, merger partners, or financial support. Similarly, in April 2010, CEC issued stock to its officers and directors in lieu of cash compensation, at an effective price of $1.25 per share. In each case, the effective price was in excess of $1.00, so there was no dilutive issuance under the terms of the CEC warrants.

Further, contrary to the allegations of their Complaints, Plaintiffs were aware of the CEC stock issuances upon which their claims are based well before the UEC merger. In June 2010,

AWM, Holbrooke, and O'Shea filed a Chapter 7 involuntary petition against CEC. In August 2010, their Arizona attorney in the bankruptcy requested and received CEC corporate records, including the minutes and resolutions of the CEC Board of Directors reflecting the August 2009 and April 2010 stock issuances at issue in this litigation, which he promptly forwarded to his clients. In early 2011, those same documents and the subject stock issuances were the subject of deposition testimony taken by plaintiffs' counsel in the bankruptcy proceeding, in the presence of Mr. O'Shea and an attorney representing Westminster.

**Legal Discussion**

Absent proof of a dilutive stock issuance, Plaintiffs cannot prevail in this action. In order to avoid summary judgment, they must present admissible evidence that would support a finding of a dilutive issuance by the finder of fact. Summary judgment is appropriate where the evidence demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Vacold LLC v. Cerami, 545 F.3d 114, 121 (2d Cir. 2008). A fact is "material" only if it affects the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute as to such a material fact requires "that a reasonable jury could return a verdict for the nonmoving party." Id.

The record in this case does not support Plaintiffs' claim that CEC issued stock to its officers and directors at an effective price of $.001, as they allege in their Complaints. To the contrary, the record reflects that the stock was issued in lieu of cash compensation, at effective prices of $1.22 and $1.25 per share. For that reason, and as will be further explained in Defendants' Motion for Summary Judgment, Defendants are entitled to judgment as a matter of law on the claims set forth in Plaintiffs' Complaints.

Even assuming there is a triable question of fact as to whether a dilutive issuance occurred before the merger, Plaintiffs' knowledge of the August 2009 and April 2010 stock issuances prior to the UEC merger, and their failure to assert their rights under the anti-dilution provisions of the CEC warrants, as well as their failure to exercise their warrant rights prior to the December 31, 2012 expiration of the exchange warrants, is fatal to their claims.

Plaintiffs do not dispute that their Arizona attorney requested and received the CEC board minutes and resolutions reflecting the August 2009 and April 2010 stock issuances which are the sole basis of their claims in this case, in August 2010, approximately one year before the UEC merger. Whether or not each Plaintiff actually reviewed those documents, the contents of those documents and their attorney's knowledge of the contents, is imputed to them, as a matter of law. The Second Circuit has long been clear that the knowledge of an attorney is imputed to his client, by virtue of the agency relationship. "For it is black letter law that a party is 'bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. Indeed the legal process could hardly function if this were not

true." Bailey v. Pataki, 952 F. Supp. 2d 626, 628 (S.D.N.Y. 2013) (citing Link v. Wabash R. Co., 370 U.S. 626, 634, 82 S.Ct. 1386 (1962)).

By virtue of the UEC merger, and the issuance of exchange warrants pursuant to the terms of the CEC warrants and the merger agreement, a novation took place, as a matter of law. *See* Callanan Indus., Inc. v. Micheli Contracting Corp., 508 N.Y.S.2d 711, 712 (4th Dep't 1986) (citation omitted) (affirming summary judgment for defendant on novation defense).

**Conclusion**

For the reasons stated above, Defendants respectfully request a pre-motion conference on their proposed Motion for Summary Judgment, which would fully dispose of all of Plaintiffs' claims in this action.

Very truly yours,

DICKINSON WRIGHT PLLC

By  Michael S. Rubin
Michael S. Rubin

MSR:tlf
Enclosures
cc: Kenneth A. Zitter, Esq.
    John Fellas, Esq.
    Hagit Elul, Esq.

PHOENIX 55243-2 355472v1

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendants.
> SO ORDERED.
> 3-30-17
> DATE    VICTOR MARRERO, U.S.D.J.