

D+F



**LAW OFFICES**
# KENNETH A. ZITTER
260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 532-8000

May 4, 2017

Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Courthouse
500 Pearl Street
New York, New York 10007

    Re: <u>Westminster Securities Corporation *et al.* v. Uranium Energy Corporation *et ano.*</u>
                15 CV 04181 (VM) (GWG)

Dear Judge Gorenstein:

    We represent Plaintiffs in the captioned matter. We write in connection with Your Honor's Order dated April 28, 2017 regarding Plaintiffs' payment of Defendants' expenses in connection with any expert's response and deposition necessitated by Plaintiffs' submission of an amended expert's report on April 5, 2017 (the "April 5 Report"). The Order was in response to Plaintiffs' request for additional time to submit that report.

    We received yesterday afternoon the list of expenses which Defendants claim they will incur in connection with an amended expert's report and for which they would seek reimbursement from Plaintiffs. We will discuss those expenses with Michael Rubin, Esq., Defendants' counsel in an attempt to resolve any differences.

    Plaintiffs, however, for the reasons hereafter set forth, respectfully request that the Court reconsider its award of any expenses in connection with the preparation of any response to the April 5 Report, including any related legal expenses, and limit reimbursement to the reasonable costs of any additional deposition (i.e., stenographer, videographer and the reasonable attorneys fees and expenses for actual attendance at any such deposition). Plaintiffs also respectfully request that Plaintiffs be entitled to take a deposition relating to any responsive expert's report submitted by Defendants.

    A brief description of what led up to Plaintiffs' request to submit the April 5 Report is necessary for the Court to consider Plaintiffs' application herein. Plaintiffs did not include a full recitation of those events in their prior letter because Plaintiffs believed that the most salient fact necessary for the Court's consideration of the motion was that the trial would not be delayed and that the passing of any other deadline would not prevent Plaintiffs from fully and fairly preparing their case.[1]

---

[1] The deadline for fact discovery and the schedule for expert discovery was adjourned several times on consent of both parties during the course of this case. This is the first time Mr.

Plaintiffs' claims herein arise from Defendant Uranium Energy Corp.'s ("UEC") failure to issue a sufficient number of warrants to Plaintiffs, with the correct terms and at the correct exercise price, in connection with UEC's acquisition of Concentric Energy Corporation ("CEC"). UEC, which is in the uranium mining business, merged with CEC, a company in the same business, on September 11, 2011. UEC was the surviving corporation. UEC issued UEC shares to CEC stockholders and UEC Warrants to CEC warrant holders, which included Plaintiffs, to consummate the merger. Plaintiffs had no previous knowledge of the terms of the UEC exchange warrants prior to their actual receipt of the UEC warrant certificates approximately two months after the merger closed.

UEC was undisputedly the successor to CEC, having taken over its business and its assets. The CEC warrants contained a clear provision that their terms were binding on its successors and assigns. The CEC warrants contained several provision relevant to the issues raised herein. First, they contained anti-dilution protection whereby the exercise price of the warrants would decrease, and the number of shares into which the warrants were exercisable would increase, if a dilutive stock issuance occurred - i.e., if CEC issued any shares at an effective price of less than the $1 exercise price at which those warrants were originally issued. Second, the CEC warrants contained a cashless exercise provision whereby CEC was obligated, upon the maturity of the warrants on December 31, 2012, to exercise the warrants automatically without any action by the warrant holder. Plaintiffs' claims herein are based upon the fact: i) that, unknown to Plaintiffs, a dilutive issuance occurred prior to the merger in September 2011 so that UEC was obligated to give the Plaintiffs substantially more warrants than they in fact received when the merger closed in September 2011; and ii) that the UEC Warrants were required to, but did not, have a cashless exercise provision. That provision was intended to insure that upon the maturity of the UEC warrants on December 31, 2012, they would be exercised automatically with the warrant holders receiving the value of those warrants upon maturity without the need for them to take any action.

On November 17, 2016, the parties exchanged their initial expert's reports. Plaintiffs submitted two separate reports, both by Douglas Schwartz, who is a certified public accountant. He submitted one report to substantiate Plaintiffs' damages suffered in September 2011 in which he calculated the difference in value between the UEC warrants Plaintiffs should have received upon the merger and the value of the UEC warrants which Plaintiffs actually received (the "September 2011 damages").[2] His second report calculated damages based upon UEC's failure to exercise Plaintiffs' UEC warrants automatically on December 31, 2012 when the warrants matured. He calculated the value of the shares Plaintiffs, upon automatic exercise of their

---

Rubin categorically refused any extension.

[2]The value of the warrants was clearly related to the value of the shares underlying the warrants, as Schwartz's calculations have set forth.

2

warrants, should have received, but did not receive, on December 31, 2012 (the "December 2012 damages").[3]

After submitting those reports, Schwartz testified in substance that he was uncomfortable with his calculations because he did not take into account the number of shares or warrants which warrant holders other than Plaintiffs would have received. Taking such additional shares and warrants into account necessarily reduced Plaintiffs' damages because, taking the other warrant holders into consideration, there would have been more shares or warrants outstanding. Plaintiffs' shares or warrants, therefore, would be worth less than he had previously calculated. That same additional calculation to take into account the shares or warrants which the other warrant holders would have received was relevant to both the September 2011 damages calculation and the December 2012 damages calculation.

Plaintiffs, therefore, submitted a supplemental report on December 15, 2016 in which Schwartz recalculated the September 2011 damages. (Defendants also submitted corrections to their expert's report at the beginning of December.) At that time, Plaintiffs already had received and reviewed Defendants' expert's report. Based upon Plaintiffs' then understanding of that report, and in order to save time and expense and streamline their case, Plaintiffs decided not to perform the additional calculations to their December 2012 damages report but then chose to rely on equitable relief - requesting the issuance of actual shares - relating to those damages.[4]

Expert depositions proceeded on February 22 and 23, 2017. The two month period between the submission of the reports and the depositions was largely attributable to mutual scheduling difficulties because of commitments in other matters. After Plaintiffs conducted the deposition of Defendants' expert, Plaintiffs had a fuller understanding of Defendants' position on damages. As a result, Plaintiffs determined that they needed to revise and submit the December 2012 damages calculations, as set forth above. Because the parties had scheduled a mediation for March 14, 2017, at which the entire matter might be resolved, Plaintiffs did not then invest the time or expense to revise the December 2012 damages calculation. When the mediation was not successful, Plaintiffs, within a week thereafter, informed Defendants that they would seek to submit the revised December 2012 damages calculation. On April 5, Plaintiffs sent a copy of the revised report to Defendants and requested permission from the Court to submit such supplemental report.

Plaintiffs respectfully submit that the purpose of discovery is for each party to learn the other party's position and the facts and arguments which support that position, so that they can properly prepare for trial. Plaintiffs respectfully submit that they should not be unfairly penalized

---

[3] The Schwartz report relating to the December 2012 damages was marked by Defendant's counsel as Exhibit 3 to the Schwartz deposition.

[4] Plaintiffs will deliver to the Court by hand all of their expert's submissions with the dates upon which they were submitted.

3

for first obtaining a full understanding of Defendants' position on damages after conducting their expert's deposition. Indeed, the purpose of taking the deposition, among other reasons, was to obtain such understanding.

Had Plaintiffs submitted their amended December 2012 damages calculation in December 2016, as they had every right to do, and as they did with their amended September 2011 damages calculation, Defendants would have had to prepare a response to that report at their own expense. Plaintiffs respectfully submit that requiring them to pay for the preparation of any responsive expert report by Defendants, and any legal time associated with such preparation, is an unfair penalty for Plaintiffs' good faith determination in December 2016 not to submit an amendment to their December 2012 damages report and their determination after taking depositions in February that they should submit such an amended report. Requiring Plaintiffs to pay for Defendants' expert's report and related legal time simply because Defendants now need to do the same work in May, 2017, rather than January 2017, Plaintiffs respectfully submit, is unfair and an improper penalty under all the circumstances of this case. The facts and circumstances set forth above, Plaintiffs respectfully submit, do not warrant a shift to Plaintiffs of Defendants' obligation to pay for its own experts. That is particularly true because, as the Court noted, there is unlikely to be any delay of the trial.

Plaintiffs respectfully submit that there has been no delay (let alone significant delay) on their part. Plaintiffs, rather, proceeded in a reasonable and expeditious manner at all times under all the circumstances. As noted above, the two month period when depositions could not be scheduled was a result of mutual scheduling difficulties and commitments in other matters.

Nor, Plaintiffs respectfully submit, should they be prevented from taking Perry's deposition should they choose to do so. Allowing Defendants to take Schwartz's deposition, but prohibiting Plaintiffs from taking Perry's deposition on the same issue, will give Defendants an unfair advantage at trial. The Court, in its Order, did not articulate any reason why such a limitation is appropriate under the circumstances. Plaintiffs are willing to take such deposition by telephone to save time and expense.

The Court denied Plaintiffs' request to conduct the deposition by remote means because Mr. Rubin objected. At the commencement of deposition discovery, this Court ordered Defendant's deposition to proceed in New York, over Mr. Rubin's objection that it should proceed in Vancouver, Canada, where Defendant is located. At Defendants' 30(b)(6) deposition, at which Mr. Adnani, Defendant Chief Executive Officer, was the deponent, he was unprepared to answer questions about core topics which were included in the deposition notice. As a result, the parties agreed to a second session of his deposition. Plaintiffs agreed to conduct, and in fact conducted, the second session of the deposition telephonically, with Mr. Adnani in Vancouver, to save Defendants the time and expense of appearing again in New York. It appears that Mr. Rubin is unwilling to reciprocate the courtesy.

4

Finally, Mr. Rubin suggests in his email to me (enclosed herewith) that Mr. Perry should not be required to submit any responsive report until after the Schwartz deposition is taken. That is a reversal of the normal procedure. Usually all expert's reports are exchanged before depositions go forward. Although the Court Order as it currently stands prohibits Plaintiffs from taking Perry's deposition regarding any responsive report, allowing him to first prepare the report after the Schwartz deposition will give Defendants an unfair advantage at trial, which, under the circumstance, Plaintiffs respectfully submit, is wholly unwarranted.

Plaintiffs, therefore, respectfully request that the Court deny reimbursement of any fees or expenses for preparation of any responsive expert's report and related legal time. Reimbursement should be limited to the actual expenses of taking another deposition, including reasonable legal fees for attendance at the deposition, as set forth above.

Respectfully submitted,

Kenneth A. Zitter

KAZ/nr
by fax - 212-805-4268

cc: Michael Rubin, Esq.

May 04 2017 11:06AM    HP LASERJET FAX

Subj: **Westminster v. UEC**
Date: 5/3/2017 2:22:56 P.M. Eastern Daylight Time
From: MRubin@dickinson-wright.com
To: KZitter@aol.com
CC: CPrice@dickinson-wright.com, TFinnell@dickinson-wright.com

Ken:

The following is our estimate of the additional time and expenses to be paid by Plaintiffs pursuant to Judge Gorenstein's order dated April 28, 2017, relating to Mr. Schwartz' new report and deposition:

Attorney Time
Review report          5 hours
Deposition preparation 12 hours
Travel time            12 hours
Deposition             6 hours

Total time    35 hours x $450.00 = $15,750.00

Expert time
Review report              10 hours
Prepare rebuttal report    25 hours
Deposition (preparation and
Attendance)                20 hours

Total time    55 hours x $380.00 = $20,900.00

Subtotal                          $36,650.00

Travel expenses

Roundtrip Airfare (coach)         $850.00

Hotel (2 nights/2 rooms)          $1,200.00

Meals                             $200.00

Subtotal                          $2,250.00

Transcription                     $1,500.00

Videographer                      $1,500.00

Estimated total                   $41,900.00

Defendants request that plaintiffs advance $20,000.00 prior to the scheduling of the deposition, with the balance to be paid within 20 days after receipt of an invoice or invoices following the deposition. We will provide you with copies of invoices and receipts for travel expenses, transcription, and video recording.

We are generally available for the Schwartz deposition during the weeks of June 12 or 19. That would allow sufficient time for David Perry to review the new report and do the initial work necessary to prepare a rebuttal

report. However, he advises me that he will be on vacation from May 22 to June 9 and that he will not be in a position to finalize his rebuttal report until he has an opportunity to review Mr. Schwartz' deposition testimony. We would agree that the rebuttal report would be due 30 days after Schwartz' deposition. I would prefer that we schedule the deposition for a Tuesday, Wednesday, or Thursday.

If you have any questions or wish to discuss any of these issues, please feel free to contact me. We will need written confirmation of your clients' agreement before we proceed.

**Michael S. Rubin** Member

1850 N Central Avenue
Suite 1400
Phoenix AZ 85004

Phone 602-285-5008
Fax   844-670-6009
Email MRubin@dickinsonwright.com

Profile | vCard

DICKINSON WRIGHT PLLC

ARIZONA FLORIDA KENTUCKY MICHIGAN NEVADA OHIO
TENNESSEE TEXAS WASHINGTON D.C. TORONTO

The information contained in this e-mail, including any attachments, is confidential, intended only for the named recipient(s), and may be legally privileged. If you are not the intended recipient, please delete the e-mail and any attachments, destroy any printouts that you may have made and notify us immediately by return e-mail.

Neither this transmission nor any attachment shall be deemed for any purpose to be a "signature" or "signed" under any electronic transmission acts, unless otherwise specifically stated herein. Thank you