United States District Court
Southern District of New York
-------------------------------------------------------x
Westminster Securities Corporation,
David R. Holbrooke, M.D., AWM Holdings,
LLC and John O'Shea,

                                       15 Civ. 04181(VM)(GWG)

                      Plaintiffs,

            v.

Uranium Energy Corporation and
UEC Concentric Merge Corporation,

                      Defendants.
-------------------------------------------------------x


Plaintiffs' Objections to Magistrate Judge Gabriel W. Gorenstein's
<u>Decision and Order Filed on June 19, 2017</u>



                                Law Offices of Kenneth A. Zitter
                                Attorneys for Plaintiffs
                                   Westminister Securities Corporation,
                                   David R. Holbrooke, M.D., AWM
                                   Holdings, LLC and John O'Shea
                                260 Madison Avenue - 18th Floor
                                New York, New York 10016
                                212-532-8000
                                KAZ-3195

# Table of Contents

Table of Authorities..........................................................................................................ii

Preliminary Statement ...................................................................................................... 1

The Standard of Review ................................................................................................... 2

Facts  ................................................................................................................................ 4

The Decision..................................................................................................................... 7

Argument......................................................................................................................... 12

Point 1 ............................................................................................................................. 12

    Defendants Have Clearly Waived Any Right To A Bench Trial ..................................... 12

Point 2 ............................................................................................................................. 18

    Defendants' Claim Of Novation Precludes The Court
    From Enforcing The Jury Waiver Provision In The SPA ................................. 17

Point 3............................................................................................................................. 21

    Defendants Should Be Estopped from
    Withdrawing Their Jury Demand................................................................................. 21

Conclusion...................................................................................................................... 24

*Applied Energetics, Inc. v. Newoak Capital Mkts., LLC*,
645 F.3d 522 (2d Cir. 2011) .............................................................................. 13

*Barnum v. Millbrook Care Ltd. P'ship*,
850 F.Supp 1227 (S.D.N.Y. 1994) ..................................................................... 13

*Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*,
2007 U.S. Dist. LEXIS 82557 (S.D.N.Y. Nov. 7, 2007) .................................... 17

*Berisford Capital Corp. v. Syncom Corp.*,
650 F. Supp. 999 (S.D.N.Y. 1987) ..................................................................... 23

*Bellmore v. Mobil Oil Corp.*, 783 F.2d 300 (2d Cir. 1986)................................. 14

*Boles v. Merck & Co.* (In re Fosamax Prods. Liab. Litig.),
647 F. Supp. 2d 265 (S.D.N.Y. 2009) ................................................................ 20

*Cass Cty. Music Co. v. Khalifa*,
1995 U.S. Dist. LEXIS 15488 (N.D.N.Y. Oct. 7, 1995)...................................... 2

*Chem. Bank v. Affiliated FM Ins. Co.*,
1996 U.S. Dist. LEXIS 11214 (S.D.N.Y. Aug. 6, 1996). .................................... 2

*Coface Collections N. Am., Inc. v. Newton*,
2012 U.S. Dist. LEXIS 124342 (D. Del. Aug. 31, 2012)..................................... 17

*Coll. Auxiliary Servs. Of State Univ. Coll., Inc. v. Slater Corp.*,
90 A.D.2d 893, 456 N.Y.S.2d 512 (3d Dep't 1982),
*aff'd* 43 F.3d 1458 (2d Cir. 1994).......................................................................... 13

*Courad LLC v. Kidville Franchise Co.*,
109 F. Supp. 3d 615, (S.D.N.Y. 2015) ................................................................. 16

*Engines, Inc. v. Man Engines & Components, Inc.*,
2012 U.S. Dist. LEXIS 22182 (D.N.J. Feb. 22, 2012) ....................................... 17

*Great Earth Int'l Franchising Corp. v. Milks Dev.*,
311 F. Supp. 2d 419 (S.D.N.Y. 2004) ................................................................. 17

*Gomez v. United States*, 490 U.S. 858,
104 L. Ed. 2d 923, 109 S. Ct. 2237 (1989) ......................................................... 3

*Hallock v. State*, 64 N.Y.2d 224, 485 N.Y.S.2d 510,
474 N.E.2d 1178 (1984) ...................................................................................... 15

*In re Artha Management, Inc.*, 91 F.3d 326 (2d Cir. 1996) ........................................................ 15

*Jaffess v. Saavedra*, No. 85 Civ. 7365 (MJL),
1986 U.S. Dist. LEXIS 26176 (S.D.N.Y. Apr. 29, 1986) ........................................................ 20

*Jones v. Hirschfeld*, No. 01 CIV. 7585 (PKL),
2003 WL 21415323 (S.D.N.Y. June 19, 2003) ...................................................................... 24

*Kahn v. GMC*, 865 F. Supp. 210, 214 (S.D.N.Y. 1994) ........................................................ 22

*Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc.*,
863 F. Supp. 2d 118 (D. Mass. 2012)........................................................................... 17, 21

*Lehman Bros. Holdings Inc. v. Bethany Holdings Grp. LLC*,
801 F. Supp. 2d 224 (S.D.N.Y. 2011) .................................................................................... 14

*Link v. Wabash R.R.*, 370 U.S. 626, 82 S. Ct. 1386,
8 L. Ed. 2d 734 (1962*)* ............................................................................................................ 15

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*,
734 F.Supp. 1071 (S.D.N.Y. 1990)............................................................................................ 4

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
458 U.S. 50, 102 S. Ct. 2858 (1982) ......................................................................................... 3

*Peretz v. United States*, 501 U.S. 923, 111 S. Ct. 2661 (1991) ................................................. 3

*Prate v. Freedman*, 583 F.2d 42 (2d Cir. 1978) ...................................................................... 15

*Quinn Constr. Inc. v. Skanska USA Bldg., Inc.*,
2010 U.S. Dist. LEXIS 127091 (E.D. Pa. Nov. 30, 2010) ....................................................... 17

*Rosen v. Dick*, 639 F.2d 82 (1980) ......................................................................................... 23

*United States v. Raddatz*, 447 U.S. 667,
65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980) .................................................................................. 3

United States v. United States Gypsum Co.,
333 U.S. 364, 92 L. Ed. 746, 68 S. Ct. 525 (1948) ................................................................... 4

*Walker v. Edison Chouest Offshore, L.L.C.*,
2006 WL 2212464 (S.D.N.Y. Aug. 3, 2006) ........................................................................... 24

*Woo v. City of N.Y.*, 1997 U.S. Dist. LEXIS 7315
(S.D.N.Y. May 23, 1997) ........................................................................................................... 15

*York Research Corp. v. Landgarten*, 927 F.2d 119 (2d Cir. 1991) ............................................ 15

<u>Federal Rules of Civil Procedure</u>:

Rule 38. ................................................................................................................. 23

Rule 38(b)............................................................................................................... 11, 23

Rule 38(d)............................................................................................................... 19, 23

Rule 72 ................................................................................................................... 2

Rule 72(b)(3) ......................................................................................................... 2

<u>Federal Magistrate Act</u>:

28 U.S.C § 636 ....................................................................................................... 3

28 U.S.C. §1391(b)................................................................................................ 20

<u>Preliminary Statement</u>

Plaintiffs hereby object to the Decision and Order of Magistrate Judge Gabriel W. Gorenstein filed June 19, 2017 (the "Decision")(Docket #81) which deemed Defendants' jury demand withdrawn. The Decision was incorrect, clearly erroneous and contrary to law because it:

i) improperly permitted Defendants to rely upon a jury waiver provision contained in a 2008 Securities Purchase Agreement ("SPA"), executed by Defendants' predecessor, which agreement Defendants themselves contended, prior to filing their jury demand herein, and continue to contend, was extinguished in September 2011 and of no further force and effect; and

ii) improperly concluded that Defendants' filing of a jury demand at the inception of this case and the later submission of an agreed upon Case Management Plan containing the parties' written agreement that "This case is to be tried to a jury," which was thereafter "So Ordered" by the Court, did not constitute a waiver of any jury waiver provision in the SPA; and

iii) improperly permitted Defendants to withdraw their jury demand after the close of fact discovery, even though Defendants do not deny that they knew of their rights under the jury waiver provision in the SPA at least four months earlier at the beginning of deposition discovery; and

iv) improperly permitted Defendants to withdraw their jury demand, which Defendants do not deny was done after the close of fact discovery for their own tactical purposes.

The undisputed facts establish that: i) Defendants' conduct waived any rights they may have had to enforce the jury waiver provision; ii) Defendants cannot rely on a jury waiver provision they assert was extinguished prior to the filing of their jury demand; and iii) in any event, under all the facts and circumstances, the Court should estop Defendants from withdrawing their jury demand at this time. In effect, the Decision improperly conferred upon Defendants the option until the end of fact discovery to determine whether their chance of prevailing in the case was better with a jury (which Defendants apparently believed at the commencement of the case) or with a judge (which Defendants apparently now believe) and to pick and choose which provisions of the SPA to enforce or to claim do not apply.

## The Standard of Review

Plaintiffs submit that the appropriate standard of review is "*de novo*" under Rule 72(b)(3) because the Decision is dispositive of Plaintiffs' constitutional right to a jury trial. Although the Decision does not determine any of the claims alleged in the Complaints, and there is case law that the grant or denial of a motion for a jury trial is "non-dispositive" for purposes of Rule 72[1], none of those cases analyzed the constitutional issues raised when a Magistrate Judge rules on constitutional rights if the District Court Judge does not have the right to *de novo* review of the

---

[1]See *Cass Cty. Music Co. v. Khalifa*, 1995 U.S. Dist. LEXIS 15488, at *1-2 (N.D.N.Y. Oct. 7, 1995); *Chem. Bank v. Affiliated FM Ins. Co.*, 1996 U.S. Dist. LEXIS 11214, at *3-6 (S.D.N.Y. Aug. 6, 1996).

ruling. United States Supreme Court precedent, as set forth in the footnote, requires *de novo* review of a Magistrate Judge's rulings when, as here, they involve constitutional rights.[2]

---

[2]In *United States v. Raddatz*, 447 U.S. 667, 65 L. Ed. 2d 424, 100 S. Ct. 2406 (1980), the question was whether Congress (in the Federal Magistrate Act, 28 U.S.C § 636) could delegate the task of rendering a final decision on a suppression motion to a Magistrate Judge. The Court concluded that no such delegation was actually made by Congress. Instead, the Act provides that the Magistrate Judge's findings shall be subjected to a "*de novo* determination by the judge who… then exercises the ultimate authority to issue an appropriate order." Id, citing S. Rep., No. 94-625, p. 3. Thus, adjudication of constitutional rights by non-Article III judges was deemed proper so long as those other adjuncts were "subject to sufficient control" by an Article III court, as is evidenced by *de novo* review. See *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 78-79, 102 S. Ct. 2858, 2875-76 (1982) (applying *Raddatz).*

In *Gomez v. United States,* 490 U.S. 858, 104 L. Ed. 2d 923, 109 S. Ct. 2237 (1989), the Court addressed a task not specifically enumerated in 28 U.S.C. §636 (*voir dire*) and applied the principle of constitutional avoidance to demand clear evidence that Congress actually intended to permit magistrate judges to take on a role that raises a substantial constitutional question. The lack of an express provision for *de novo* review, coupled with the absence of any mention in the statute's text or legislative history of a magistrate's conducting *voir dire* without the parties' consent, convinced the Court that Congress had not clearly authorized this type of delegation. *Id.* at 875-6. See also *Peretz v. United States*, 501 U.S. 923, 930-932, 111 S. Ct. 2661(1991) (characterizing and distinguishing *Gomez* as inapplicable to a case where defendant consented to *voir dire,* explaining that consent both removed the constitutional difficulty which would otherwise require unambiguous evidence of Congressional intent to include *voir dire* and eliminated concern that a general authorization should be read lightly to deprive a party of an important privilege). In *Peretz*, the Court further found that delegation of *voir dire* with a party's consent was permitted as an unspecified "additional duty" of a Magistrate Judge (§636(b)(3)) because it more closely resembled, in responsibility and importance, those duties which expressly require consent (§636(c)).

Together, these precedents compel the finding that the disposition of a litigant's constitutional right to a jury trial may only, if at all, be delegated to a Magistrate Judge, if accompanied by a right to *de novo* review by an Article III judge. *Gomez*'s principle of constitutional avoidance mandates that absent express intent to include determination of a right to jury trial, the statute does not authorize such delegation. Per *Radddatz,* delegation of such constitutional rights are deemed proper only when subject to *de novo* review. Finally, as in *Peretz*, comparison to the tasks expressly enumerated in the statute compels the finding that determination of the right to a jury trial more closely resembles, in responsibility and importance, those motions subject to *de novo* review.

Even if the Court concludes that the right to a jury trial is a non-dispositive issue subject to the "clearly erroneous or contrary to law" standard, the Decision is clearly erroneous and contrary to law. "The Supreme Court has recognized that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948)." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 734 F.Supp. 1071, 1079-80 (S.D.N.Y. 1990). As hereafter set forth, the Decision clearly leaves the definite conviction that a mistake has been committed.

Facts

Plaintiff Westminster Securities Corporation ("Westminster") filed suit on June 2, 2015 (Docket #1).[3] Westminster and the other Plaintiffs originally held warrants (the "Warrants") to purchase shares in Concentric Energy Corporation ("CEC") which they acquired from CEC in December 2008. The Plaintiffs other than Westminster acquired their Warrants pursuant to the SPA. Westminster acquired its Warrants as an investment banking fee. The Warrants contained anti-dilution provisions which required CEC to reduce the exercise price of the Warrants, and increase the number of shares into which the Warrants could be exercised, in the event of a dilutive issuance of shares by CEC. The Warrants also contained provisions: i) requiring CEC to

---

[3]The other Plaintiffs filed a substantially identical suit on July 30, 2015, Index No. 15CV6087 (Docket #1). The Court consolidated the cases (Docket #21).

exercise the Warrants automatically, on a cashless basis, upon the maturity of the Warrants on December 31, 2012; and ii) imposing CEC's obligations under the Warrants on any successor.

The SPA also contained a jury waiver provision. Although Plaintiffs signed the SPA, CEC did not. The Warrants, signed by CEC but not by Plaintiffs, contained a provision which required that "all questions concerning the construction, validity, enforcement and interpretation of this Warrant shall be determined in accordance with the provisions of the Purchase Agreement."[4]

In September 2011, CEC merged with Defendant Uranium Energy Corporation ("UEC"). UEC was the surviving entity and CEC's successor. The Merger Agreement contained formulas for determining how many UEC shares would be issued each CEC share and how many UEC Replacement Warrants (the "Replacement Warrants") would be issued for each CEC Warrant. After the merger, Plaintiffs surrendered their Warrants and received the Replacement Warrants.

In the Complaints Plaintiffs alleged, among other things, that as a result of a dilutive issuance of stock by CEC in August 2009 and April 2010, UEC, upon its merger with CEC in September 2011 and in accordance with the terms of the Merger Agreement, issued too few Replacement Warrants, and at an improper exercise price, to replace the CEC Warrants which Plaintiffs surrendered in the merger. Plaintiffs also complained that the Replacement Warrants

---

[4]The Decision erroneously stated that Plaintiffs signed both the SPA and the Warrants (see Decision, p. 4, bottom paragraph).

failed to include a provision for cashless exercise upon maturity and for anti-dilution rights (Westminster Amended Complaint, ¶6 - 19, Docket #17).

Prior to filing its Answer, UEC moved on July 15, 2015 to dismiss the Westminster Complaint (Docket #8) contending that as a result of the issuance of the Replacement Warrants in or about the end of 2011, a novation occurred and the old CEC Warrants, and the SPA pursuant to which they were issued, were extinguished and of no further force and effect. The Replacement Warrants did not contain any jury waiver. The Replacement Warrants contained an integration clause which provided that no prior covenants, representations or understandings would be binding unless contained in the Replacement Warrants. (Zitter Sur-Reply Affirmation, Exhibit 3, Docket #62).

Defendants withdrew their motion and, on September 11, 2015, filed their Answer (Docket #22) in which they demanded a jury and in which they asserted an affirmative defense of novation. Plaintiffs, agreeing that the case should be tried by jury, and thereby waiving any contract right they may have had to a bench trial, did not move to strike the jury demand. On September 25, 2015, pursuant to Your Honor's direction, the parties submitted, under cover of a letter signed by Mr. Rubin, UEC's counsel, a jointly agreed upon proposed Case Management Order, which affirmatively stated "This case is to be tried by jury" (Docket #23). Your Honor, on October 1, 2015, signed and entered the Case Management Order (Docket #25). Thus this Court ordered more than a year and a half ago, that this case was to be tried to a jury.

The case proceeded as a jury trial until Defendants, on October 10, 2016, after the close of fact discovery on September 30, 2016, moved to withdraw their jury demand, claiming that the SPA pursuant to which Plaintiffs obtained their CEC Warrants in December 2008 contained a jury waiver which entitled Defendants, presumably as CEC's successors, to withdraw their demand for a jury in October 2016.

## The Decision

The Decision permitted Defendants to withdraw the jury demand holding that the SPA contained a valid, enforceable jury waiver. The Decision also found that Defendants' request for a jury and their agreement to what the Decision termed an "unsigned" proposed Case Management Plan specifying that both parties had agreed to a jury did not waive the contractual jury waiver in the SPA and that it would not be inequitable to allow Defendants to withdraw their jury demand, even though "some time" had elapsed since Defendants allegedly became aware of the jury waiver and fact discovery had already concluded. The Decision also found that Plaintiffs' claim that Defendants were seeking some advantage by waiting until the conclusion of discovery to move to withdraw their jury demand was "speculative" (Decision, p. 10).

The Decision determined that notwithstanding the fact that there is no evidence that CEC signed the SPA which contains the jury waiver provision, the fact that the Warrants (which were signed only by CEC, not Plaintiffs) provided that they can only be enforced in accordance with

the terms of the SPA waives any right to a jury in any action to enforce the Warrants (Decision, p. 6).[5]

The Decision then determined that none of Defendants' actions waived their contractual right to a bench trial contained in the SPA. First the Decision noted the language of the jury waiver - that such waiver is "irrevocable" - and questioned whether such an irrevocable waiver could itself be waived (Decision, p. 6.). The Decision completely ignored the clear law, set forth in Plaintiffs' papers below and uncontested by Defendants, that contract provisions which are by their terms irrevocable can be waived. Parties to an agreement cannot, even by express language to that effect, deprive themselves of the power to waive a contract clause.[6]

_____

[5]The Decision states that Plaintiffs raised in their sur-reply papers for the first time the argument that they can escape the effect of the jury waiver provision because CEC never signed the SPA (Decision, p. 5). That statement incorrectly implies that the argument was an afterthought. When Defendants first moved to withdraw their jury demand on October 14, 2016, they only submitted a draft of the SPA unsigned by anyone. Plaintiffs responded, in substance, that a jury waiver unsigned by any party is not effective so that Defendants' motion to withdraw their jury demand must be denied. In their reply papers, for the first time, Defendants produced Plaintiffs', but not CEC's, signatures to the SPA. In their sur-reply papers, which was Plaintiffs' first opportunity to address the partially executed SPA (as opposed to a completely unexecuted SPA), Plaintiffs contended that the partially executed SPA did not bind CEC to the jury waiver provision therein. Plaintiffs were not required to foresee in their original responsive papers that Defendants would thereafter produce a partially executed SPA. In effect, Defendants' reply papers were in substance their original motion papers, Plaintiffs' sur-reply papers were in substance their original answering papers, and Defendants' response to Plaintiffs' sur-reply papers were, in substance, their reply papers.

[6]That law was fully set forth on p. 7, note 8, of Plaintiffs' Memorandum In Opposition (Docket #63).

The Decision next noted the provision of Section 5.5 of the SPA which provides that any waiver of a provision thereof must be in a writing signed "by the party against whom enforcement of such waived provision is sought" and that any amendment must be signed by the Company and by 2/3 of the Warrant holders (Decision, p. 7). The Decision questioned whether the Answer, containing the jury demand, "qualifies as a written instrument that intended to waive, modify, supplement, or amend the SPA." The Decision noted that the Answer was not signed by CEC or by any successor entity (presumably UEC). It was signed only by an attorney and that Plaintiffs provided no evidence that Defendants' attorney had authority to bind them to a waiver under Section 5.5. Defendants never argued that their attorney did not have authority to bind them to a jury trial. The issue of their attorney's authority to bind Defendants to a jury trial, therefore, was never briefed below.

The Decision correctly noted that a proposed Case Management Plan containing the affirmative statement "This case is to be tried to a jury" was submitted to the Court for signature on September 25, 2015, and was in fact "So Ordered" by the Court on October 1, 2015 (Docket #26, Decision, p. 3). The Decision stated that the proposed plan was unsigned. The Decision did not mention the fact that Defendants' attorney signed the cover letter, stating that the plan referenced in and enclosed with the letter was "agreed upon by counsel for the parties." (Zitter Affirmation In Opposition, Docket #47, Exhibit 6). Defendants' attorney was also authorized by Plaintiffs' attorney to submit the letter on behalf of Plaintiffs (Your Honor requested a joint submission). Thus the Decision never reached the question of whether Case Management Plan,

referred to in a cover letter signed by Defendants' attorney, constituted a written waiver of any prior right to a bench trial.

Then, rejecting the need to determine whether an irrevocable waiver could ever itself be waived and whether the Answer with its jury demand qualified as a written instrument which was intended to waive, modify, supplement or amend the SPA, the Decision concluded (Decision, p. 7) that the jury demand was not really a jury demand because it only demanded a jury for all issues triable to a jury. Because, as a result of the SPA, no issues were triable to the jury, the Decision found that Defendants never really demanded a jury so the jury demand itself could not constitute a waiver.[7] According to the Decision, Defendants' counsel was merely involved in a wholly ineffective act by demanding in the Answer something non-existent, i.e., the right to a jury trial. That is, Plaintiffs respectfully submit, a very unrealistic characterization of the reality. No doubt, when Defendants' counsel filed the jury demand, he did so with the intent of obtaining a jury trial. The qualification "of all issues so triable" was no doubt meant to address the fact that the Complaints sought, in part, equitable relief, as to which there is by law no right to a jury.[8] It is clearly erroneous to conclude that Defendants' counsel did not intend to obtain a jury by his

---

[7]The Decision never considered that because the Case Management Plan was agreed to by both parties in writing, that in addition to a waiver, it also constituted an agreement to amend the jury waiver provision in the SPA. An agreement which in fact amends a prior agreement does not depend on any intent to do so.

[8]Even if the jury demand stated "Defendants demand a jury" without the qualification "of all issues so triable" Defendants would not have obtained a jury trial on any issue as to which a jury is not obtainable under law - i.e., for equitable claims. In reality, Plaintiffs respectfully submit, there is no difference between a demand which states that a party demands a jury and that a party demands a jury as to all issues so triable.

10

demand for same in the Answer. Such intention to obtain a jury trial is clearly inconsistent with any prior jury waiver so that the only reasonable conclusion is that the jury demand in fact waived any prior jury waiver.

The Decision determined that Plaintiffs had no equitable grounds for objecting to the withdrawal motion (Decision, p. 10). The Court stated that Plaintiffs' position would have more force if they could reasonably have relied on Defendants' jury demand, which they could not because of the jury waiver provision in the SPA. The Decision noted that Plaintiffs could have moved to strike the jury demand at any time had they found such a motion to be in their interest. It was not, however, unreasonable for Plaintiffs to assume that when Defendants demanded a jury, they intended for the case to proceed as a jury trial, notwithstanding any provisions in the SPA.[9] Because Plaintiffs also desired the case to proceed as a jury trial, they agreed upon a jury trial with Defendants and jointly submitted the agreed upon proposed Case Management Plan so demanding a jury trial. After such agreement, contrary to the Decision, Plaintiffs were not free to move to withdraw their jury demand.

In any event, that agreement on Plaintiffs' part constituted an independent demand for a jury because it was filed with the Court on September 25, 2015, within fourteen days after the filing of the last pleading directed to the issue, Defendants' Answer filed on September 11, 2015. Thus Plaintiffs made a timely jury demand in accordance with Rule 38(b) (Plaintiffs'

_____

[9]There is certainly no obligation on Plaintiffs' part, after Defendants demanded a jury in their Answer, to inquire whether or not such demand was a waiver of their rights under the SPA.

Memorandum of Law In Opposition, p. 21, Plaintiffs' Sur-Reply Memorandum of Law, p. 6, note 4, Docket #49, 63) and had no need to rely on Defendants' demand.

The Decision further found that Plaintiffs' argument that Defendants obtained an unfair advantage by waiting until the close of discovery to move to withdraw their jury demand was unpersuasive. The Decision stated that the "Court cannot conclude that anything occurred in discovery gave the defendants an incentive to have the case tried to the Court rather than a jury." (Decision, p. 10). Defendants, however, never denied that they waited until the close of discovery to make their motion to obtain a tactical advantage (as Plaintiffs' claimed - see Plaintiffs' Memorandum of Law In Opposition, Docket #49, p. 18, note 11). Nor have Defendants otherwise explained their reason for the lengthy delay in bringing the motion. Plaintiffs respectfully submit that if Defendants did not perceive some advantage in this case to having the case tried to a judge rather than a jury, they would not have brought the motion to withdraw their jury demand.

<u>Argument</u>

<u>Point 1</u>

<u>Defendants Have Clearly Waived Any Right to A Bench Trial</u>

The Decision concluded that there was an agreed upon jury waiver in the SPA. The filing of a subsequent jury demand, therefore, cannot create a right to a jury trial where none previously existed (Decision, p. 7 - 8). The Decision quoted the provisions of the SPA (Decision, p. 7) which

required any "waiver" to be in a writing signed by the party to be charged or any "amendment" to be signed by CEC and the holders of 66 2/3% of the Warrants.[10]

The Court below stated (Decision, p. 3) that the Case Management Plan was unsigned when submitted to Your Honor for signature and, therefore, presumably, did not qualify as a signed writing constituting a waiver of the right to a bench trial in accordance with the terms of para. 5.5 of the SPA. The Decision, however, does not mention that the letter transmitting the agreed upon Case Management Plan was signed by Mr. Rubin, Defendants' attorney (Docket #23, Exhibit E to Zitter Affirmation). That letter stated: "Enclosed with this letter is a proposed Civil Case Management Plan and Scheduling Order <u>that has been agreed upon by counsel for the parties</u>" (emphasis added). Mr. Rubin was also authorized on behalf of Plaintiffs to submit the agreed upon Case Management Plan to the Court. Thus a writing signed by Defendants' attorney does exist which waives Defendants' rights to a bench trial. The same writing also constitutes an agreement by both parties to a jury trial.[11]

---

[10]There is no dispute that Plaintiffs held at least 66 2/3% of the Replacement Warrants just prior to their expiration on December 31, 2012.

[11]The law is clear that a subsequent contract on the same subject matter supersedes the prior contract. *Applied Energetics, Inc. v. Newoak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) ("Under New York law, '[i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract.' *Barnum v. Millbrook Care Ltd. P'ship*, 850 F.Supp 1227, 1236 (S.D.N.Y. 1994) (citing *Coll. Auxiliary Servs. Of State Univ. Coll., Inc. v. Slater Corp.*, 90 A.D.2d 893, 456 N.Y.S.2d 512 (3d Dep't 1982)), *aff'd* 43 F.3d 1458 (2d Cir. 1994)").

The Decision was inconsistent regarding the requirements of a signed writing. Although the Decision allowed the CEC Warrants, signed only by CEC, to incorporate by reference the jury waiver provisions of the unsigned (by CEC) SPA, the Court below was apparently unwilling to consider Mr. Rubin's signature on the cover letter referencing the parties' agreement to have the case proceed as a jury trial, as a signed agreement by UEC and Plaintiffs (who authorized Mr. Rubin to file the letter and Case Management Plan on their behalf) for the case to proceed as a jury trial and, thereby, to waive any prior jury waiver contained in the SPA. If the CEC Warrants can incorporate the unsigned (by CEC) jury waiver provisions of the SPA, then a letter signed by Defendants' attorney referencing and enclosing a document in which Defendants agreed to a jury trial should also be considered a signed writing by Defendants.

The Decision below questions, without deciding, whether an attorney would be authorized to waive a bench trial on behalf of his clients. The law is clear, however, that an attorney, even by mistake, can waive a right to a jury trial, which is a constitutional right, on behalf of his client. *Lehman Bros. Holdings Inc. v. Bethany Holdings Grp. LLC*, 801 F. Supp. 2d 224, 230 (S.D.N.Y. 2011) ("After all, a lawyer in civil litigation can through his own error waive his client's jury trial right. *See Bellmore v. Mobil Oil Corp.*, 783 F.2d 300, 307 (2d Cir. 1986)"). 6A NY Jur.2d, *Attorneys at Law*, ¶129 (2009 ed.) ("An attorney who has been retained by a client on a matter is generally considered to have authority - to waive trial by jury.") If an attorney is authorized to waive a jury trial, which is a constitutional right, an attorney is certainly authorized to waive a contractual jury waiver and thereby obtain a jury trial for his client. In reality, the decision whether a case should proceed as a jury trial or as a bench trial is within an attorney's power to

decide because it is within the scope of his retention. Clients don't decide whether cases proceed before a jury or a judge, attorneys do.

It is black letter law in this Circuit that a client is bound by the conduct of his attorney. *In re Artha Management, Inc.*, 91 F.3d 326, 329 (2d Cir. 1996) (presumption that attorney who enters into a settlement agreement had authority to do so); *York Research Corp. v. Landgarten*, 927 F.2d 119, 122 (2d Cir. 1991)("As the Supreme Court has observed, a litigant 'is deemed bound by the acts of his lawyer-agent . . .'")(quoting *Link v. Wabash* R.R., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390, 8 L. Ed. 2d 734 (1962)); *Prate v. Freedman*, 583 F.2d 42, 48 (2d Cir. 1978) ("Like any other principal, a client may be bound by the acts of his [attorney], acting within the scope of his authority. . . . 'Petitioner voluntarily chose this attorney as his representative in this action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'")(quoting *Link v. Wabash R.R.*); *Woo v. City of N.Y.*, 1997 U.S. Dist. LEXIS 7315, at *10 (S.D.N.Y. May 23, 1997) (holding that counsel's consent to §636(c)) trial by magistrate judge was binding, despite that provision required consent of a "party."); *Hallock v. State*, 64 N.Y.2d 224, 230-32, 485 N.Y.S.2d 510, 513-14, 474 N.E.2d 1178, 1181-82 (1984)("From the nature of the attorney-client relationship itself, an attorney derives authority to manage the conduct of litigation on behalf of a client, including the authority to make certain procedural or tactical decisions.").

In any event, Defendants never questioned their attorneys' authority to agree to, sign on their behalf, and submit the Case Management Plan to the Court containing their affirmative agreement that this case is to be tried to a jury.[12]

The Decision analyzed, and then refused to follow those cases cited by Plaintiffs which clearly hold that a jury demand constitutes a waiver of any prior contractual right to a bench trial. But none of the cases relied on by the Decision involved a Case Management Plan affirmatively stating that both parties agreed that the case should be tried to a jury. Thus in *Courad LLC v. Kidville Franchise Co.*, 109 F. Supp. 3d 615, (S.D.N.Y. 2015), in which the jury demand was not, as herein, made by the party who sought to remove it, the court noted that the Case Management Plan was submitted <u>after</u> defendants sought leave to strike the other party's jury demand, thereby manifesting a clear intent not to waive their right to a bench trial. In this case, Defendants do not contest that they had at least constructive knowledge of their right to a

---

[12] To the extent that the Decision questions whether Defendants' attorney had authority to bind Defendants to a waiver under Section 5.5 as the attorney was not the party bound by the SPA (Decision, p. 7), New York General Obligations Law § 15-301, provides:

> A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought **or by his agent**.(emphasis added)

Clearly, then, the no-oral modification clause in the SPA, §5.5, does not preclude subsequent modification, waiver or amendment signed by a party's agent, in this case, the party's attorney acting within the scope of his authority.

bench trial when they agreed to the Case Management Plan (see Plaintiffs' Memorandum of Law

In Opposition, p. 9 - 10, Docket #49).

Neither *Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc.*, 863 F. Supp. 2d 118

(D. Mass. 2012), *Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 2007 U.S. Dist. LEXIS

82557 (S.D.N.Y. Nov. 7, 2007) nor *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F.

Supp. 2d 419 (S.D.N.Y. 2004), the only other cases cited by the Court below to support its

conclusion regarding waiver, involved a jointly agreed upon Case Management Plan affirmatively

stating that both parties agreed to a jury.[13] The Decision holding that there was no writing signed

by Defendants waiving a right to bench trial, is, therefore, clearly erroneous.

---

[13]Although not cited by the Court below, Defendants, in their motion to withdraw their jury demand also relied on *Engines, Inc. v. Man Engines & Components, Inc.*, 2012 U.S. Dist. LEXIS 22182 (D.N.J. Feb. 22, 2012) (Defendants' Memorandum In Support of Motion, p. 6, Docket #43). Although no Case Management Plan was involved, the court noted that the filing of the Joint Final Pre-Trail Order with the caption "Jury Trial Demanded" merely indicated that at least one of the parties demanded a jury trial. Again, as in *Courad*, the party seeking removal of the demand was not the one who demanded the jury in the first place. Thus there was no clear and unequivocal agreement between the parties, as here, that the case was to be tried to a jury. Neither *Quinn Constr., Inc. v. Skanska USA Bldg., Inc.,* 2010 U.S. Dist. LEXIS 127091 (E.D. Pa. Nov. 30, 2010) nor *Coface Collections N. Am., Inc. v. Newton,* 2012 U.S. Dist. LEXIS 124342 (D. Del. Aug. 31, 2012), also cited by Defendants in their Memorandum of Law involved a jointly agreed upon Case Management Plan agreeing to a jury.

Point 2

Defendants' Claim of Novation Precludes The Court
From Enforcing The Jury Waiver Provision In The SPA

Prior to making their demand for a jury herein, Defendants contended, in a motion to this Court (Docket #43), that the SPA and the jury waiver contained therein had been extinguished because the Replacement Warrants constituted a novation which extinguished the Warrants and the SPA pursuant to which they were issued. Defendants still assert a novation defense.

Defendants, therefore, cannot avail themselves of the jury waiver which they disavowed and continue to disavow. In their motion, Defendants contended that the only operative document which defined the parties' rights regarding Plaintiffs' claims were the Replacement Warrants which contained no jury waiver. The Replacement Warrants also contained an integration clause which provided that no agreements between UEC and the Replacement Warrant holders (the Plaintiffs) were binding unless set forth therein, Thus the Replacement Warrants provide (para.12):

> This [Warrant] Certificate contains the entire understanding between the Corporation [UEC] and the holder relating to the subject matter contained herein, and merges all prior discussions, negotiation and agreement, if any between them. Neither of the parties to this agreement shall be bound by any representations, warranties, covenants or other understandings relating to such subject matter, other than as expressly provided for or referred to herein.

In their motion, Defendants asserted that the Merger Agreement between CEC and UEC provided that the Replacement Warrants <u>replaced</u> the Warrants, that the Warrants were <u>disposed of and extinguished</u> as a result of the merger, and the Merger Agreement (Paragraph 3.3(c))

18

required issuance of the UEC Exchange Warrants "against the delivery and surrender of the agreements [SPA] and certificates representing the corresponding Concentric Warrants." (see Zitter Affirmation in Opposition, Exhibit 7, p. 15, Docket #47). Because UEC asserted that the CEC Warrants and the agreements relating thereto (i.e., the SPA) were extinguished upon issuance of the UEC Exchange Warrants, any contractual right to a bench trial contained in those documents was also extinguished. Although Defendants withdrew their motion, immediately upon such withdrawal they filed their demand for a jury while simultaneously maintaining their defense that the jury waiver had been extinguished by novation.

The Decision noted Plaintiffs' argument about Defendants' denial of the validity of the SPA, but concluded that such denial did not prevent Defendants from arguing herein that a valid jury waiver existed because Defendants' position does not prevent Defendants from holding Plaintiffs to the jury waiver in the very warrants they are seeking to enforce (Decision, p. 5, note 2). Plaintiffs respectfully submit that such conclusion is clearly erroneous. If Defendants denied in their court filed motion the viability of the jury waiver clause in the SPA, then, when Defendants filed their jury demand (Defendants, not Plaintiffs, filed the jury demand), such filing was perfectly proper unaffected by any jury waivers contained in the SPA. Whether or not Plaintiffs were bound by the jury waiver is not relevant to determine whether Defendants' jury demand was proper within the meaning of Rule 38(d).

Although the Decision noted that Plaintiffs relied on the venue provision of the SPA when bringing the action (Decision, p. 2), the Decision does not address the fact, as argued below, that

Defendants did not admit that such venue provision was binding. In their Answer, Defendants artfully avoided confirming the viability of the SPA so that they could preserve their novation defense.[14]

Thus UEC does not admit that the venue provisions of the SPA govern or that the SPA is a document which continues to govern the parties' rights. UEC only admits that based upon a documents which Plaintiffs allegedly assert as viable, venue is proper. UEC apparently made a strategic decision not to contest jurisdiction and venue, but without admitting the continuing viability of the SPA because to have done so would have negated its position that a novation occurred upon issuance of the UEC Replacement Warrants whereby the CEC Warrants and the SPA were extinguished. UEC cannot have it both ways - it cannot take the position that the SPA is no longer in existence for purposes of its novation defense, yet rely on the SPA with respect to any jury waiver contained therein. See, e.g. *Jaffess v. Saavedra*, No. 85 Civ. 7365 (MJL), 1986 U.S. Dist. LEXIS 26176, at *1 (S.D.N.Y. Apr. 29, 1986) (denying motion where plaintiff made inconsistent arguments as to defendant's diversity of citizenship); *Boles v. Merck & Co.* (In re Fosamax Prods. Liab. Litig.), 647 F. Supp. 2d 265, 276 (S.D.N.Y. 2009) ("Plaintiff cannot allege one set of facts in support of her failure to warn claims and then allege a conflicting set of facts in order to admit an expert to support those claims and to demand punitive damages flowing from those claims.").

---

[14] UEC responded to the venue allegations of the Complaints as follows:

"Answering paragraph 5 of the Complaint, Defendants admit that venue is appropriate in this District under 28 U.S.C. §1391(b), <u>based upon the language of the written agreement upon which plaintiff bases its claims</u>. Defendants deny each and every remaining allegation set forth in paragraph 5 of the Complaint not expressly admitted herein." (Emphasis added)

The relevant question, Plaintiffs respectfully submit, was not whether they are bound by the SPA jury waiver because they relied on the venue provisions of the SPA. The relevant question, Plaintiffs respectfully submit, is whether Defendants, who filed the jury demand and are now seeking to disavow it, can rely on a provision of an SPA which they disavowed in their motion and continue to disavow in their Answer. There is no credible argument, and Defendants do not so argue, that their attorney who filed the motion papers on their behalf disavowing the SPA and its jury waiver provision was not authorized to do so. Plaintiffs respectfully submit that the only conclusion is that Defendants cannot so rely on an agreement they disavow and any other conclusion is clearly erroneous.

Defendants, therefore, have in effect, admitted in their court motion filing that the SPA was extinguished and was no longer binding on them when this suit was commenced. As such, there is no jury waiver enforceable against Defendants to support their requested withdrawal of the jury demand.

Point 3

Defendants Should Be Estopped From Withdrawing Their Jury Demand

The Court below noted, without deciding, that inequitable conduct may estop a party from enforcing an otherwise enforceable jury waiver (Decision, p. 10 -11). *Landmark Fin. Corp. v. Fresenius Med. Care Holdings, Inc*., 863 F. Supp. 2d 118 (D. Mass. 2012) (Decision, p. 11) so

provides.[15] That case specifically recognized that it would be unfair to allow a party to disavow a jury when it perceives, as here, that it would be better off with a bench trial. See also: *Kahn v. GMC*, 865 F. Supp. 210, 214 (S.D.N.Y. 1994) (conditional waiver of jury demand requiring specific judge was not enforceable, as change of fact-finder to jury would have prejudiced opposing party). Each case, obviously, must be determined on its particular facts to determine if a party should be estopped from enforcing a jury waiver.

In this case, the Court below clearly erred by not imposing such estoppel for numerous reasons. First, it allowed Defendants to reverse positions, according to their need of the moment, on whether the SPA was viable or extinguished. Second, it allowed Defendants to change the trier of fact after the close of fact discovery when Defendants did not deny that they did so to obtain a tactical advantage (why else would they do it). Third, it allowed Defendants to delay bringing its motion to withdraw the jury demand, which Defendants admittedly knew of "for some time" and did not deny actually knowing of their right to a bench trial from the beginning of deposition discovery some four months earlier (see Zitter Affirmation, ¶8, Docket #47). This allowed Defendants the opportunity to review all of the evidence before selecting the trier of fact. Fourth, Defendants filing of a jury demand at the beginning of the case clearly showed their intent to have the case proceed as a jury trial. Taken together, Defendants' conduct is highly inequitable and

_____

[15]Although *Landmark* itself involved a request to withdraw a jury close to trial, the Court does not limit unfairness only to that circumstance. The court stated, 863 F. Supp. 2d at 121: "This Court is unaware of any case in which a party has been found to have waived or forfeited, or has been estopped from enforcing, its jury waiver by filing a jury demand. On the other hand, research uncovers a mere handful of circumstances in which a party with an enforceable jury waiver has filed a jury demand only to withdraw it shortly before trial. The absence of precedent, therefore, speaks more to a dearth of similar circumstances than to the propriety of such a rule."

improperly reserved for themselves the option to determine the trier of fact at the end of fact discovery. The Court determination below not to apply an estoppel based upon Defendants' conduct is clearly erroneous.

Under the Federal Rules, parties are required to designate a judge or a jury as the trier of fact at the inception of the case. Fed.R.Civ.P. Rule 38(b). Thus parties are required to make a strategic decision before discovery begins whether they are more likely to prevail with a judge or a jury. Defendants' counsel in this case, therefore, made the intentional strategic decision at the beginning of the case, prior to the commencement of discovery, that Defendants' case would more likely resonate with a jury rather than with a judge. The Second Circuit has emphasized the notice function of Rule 38(d), noting that the initial demand (or lack thereof) puts the other parties on notice at an early stage in the litigation that a jury (or the court) will be trying the issues. *Rosen v. Dick*, 639 F.2d 82, 96 (1980) (Rule 38 . . . "is meant to ensure that the parties know at an early stage in the litigation who the fact finder will be.").

This district, in *Berisford Capital Corp. v. Syncom Corp.*, 650 F. Supp. 999, 1001 (S.D.N.Y. 1987), has followed the Circuit court's lead as well:

> The goal of Rule 38's requirement of a timely jury demand and, failing that, of automatic waiver, is to provide adequate notice to the parties of whether they will appear before a court or a jury. The time limits allow the parties to make that determination within ten days after the service of the last pleading directed to the issue on which a jury trial may be demanded. The parties may then rely on the Rule's explicit terms in presuming that the fact-finder will not thereafter change for the claims raised in the complaint.

See also: *Walker v. Edison Chouest Offshore, L.L.C.*, 2006 WL 2212464, at *2 (S.D.N.Y. Aug. 3, 2006); *Jones v. Hirschfeld*, 2003 WL 21415323, at *5 (S.D.N.Y. June 19, 2003) ("Numerous Courts in this Circuit have noted the importance for both the parties and the Court to know at an early stage in the litigation who the fact finder will be."). Once Defendants demanded a jury in this case, and both parties so agreed in the Case management Order, both parties understood that the fact-finder would be a jury. The Decision below erroneously permitted Defendants to avoid selecting the finder of fact at the commencement of the action, contrary to federal rules and policy.

<u>Conclusion</u>

For the foregoing reasons, the Court should reverse the Decision below and order that this case proceed as a jury trial.

Respectfully submitted,
Law Offices of Kenneth A. Zitter

By_____
     Kenneth A. Zitter
Attorneys for Plaintiffs
   Westminister Securities Corporation,
   David R. Holbrooke, M.D., AWM
   Holdings, LLC and John O'Shea
260 Madison Avenue - 18th Floor
New York, New York 10016
212-532-8000
KAZ-3195